UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROLAND MORENO, Individually; | § | |
| RHONDA WHITE, Individually and as | § | |
| Mother, and Next Friend of M.M., a | § | |
| minor, and as Representative of the | § | |
| Estate of Marshall Moreno, Deceased; | § | |
| and RITA MORENO, Individually and | § | |
| as Executrix of the Estate of Marshall | § | |
| Moreno, | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-4106-B |
| | § | |
| OFFICER ALBERT SANCHEZ and | § | |
| CITY OF DALLAS d/b/a DALLAS | § | |
| POLICE DEPARTMENT, | § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is The Defendant, City of Dallas', Motion Pursuant to Rule 12(b)(6) to Dismiss the Plaintiffs' Claims Alleged Against It in the Plaintiffs' First Amended Complaint (doc. 15) filed by the City of Dallas on December 31, 2013. For the reasons stated below, Defendant's Motion is **GRANTED**.

I.

BACKGROUND[1]

This case arises out of the death of Marshall Moreno. Plaintiffs Roland Moreno, individually

---

[1] The Court draws its factual account from the allegations contained in Plaintiffs Roland Moreno and Rhonda White's First Amended Complaint (doc. 13), as well as from the attachments and documents incorporated therein by reference. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

and as representative of the Estate of Marshall Moreno, and Rhonda White, individually and as mother and next friend of minor M.M., filed suit against Defendants Officer Albert Sanchez and the City of Dallas pursuant to 42 U.S.C. § 1983 and Texas law. Specifically, Plaintiffs assert claims for (1) deprivation of Mr. Moreno's "right to bodily security and liberty," in violation of the Fourteenth Amendment; (2) excessive force and unreasonable and illegal seizure, in violation of the Fourth Amendment; (3) conspiracy; and (4) wrongful death. Am. Compl. 4–5, 8.

A. *Factual Background*

Plaintiffs' complaint offers only a limited account of the events that gave rise to their claims. On October 9, 2012, Defendant Albert Sanchez, an officer with the Dallas Police Department, arrested Marshall Moreno by using mace and a submission hold. Am. Compl. 2 at ¶ 6. At the time of his arrest and "all times pertinent hereto," Marshall Moreno was unarmed and posed no threat to Officer Sanchez "or the public at large." *Id.* at 3. Indeed, Mr. Moreno did not "engage in any sudden movements, furtive gestures, [or] other actions which could be interpreted as threatening to others, or evince any overt attempt to flee." *Id.* Plaintiffs allege that Officer Sanchez had no legitimate law enforcement purpose to engage Mr. Moreno in the manner he did. *Id.* They claim Officer Sanchez was instead acting pursuant to "informal policies, habit(s), custom(s) and/or practice(s) of Defendant City of Dallas Police Department" that allowed this use of force against Mr. Moreno. *Id.*

B. *Procedural Background*

On October 10, 2013, Plaintiffs filed suit against Defendants Albert Sanchez and the City of Dallas (the "City").[2] Doc. 1. On November 15, 2013, the City filed a motion to dismiss. Doc. 8.

---

[2] The day before Plaintiffs filed suit Rita Moreno, as executrix of the Estate of Marshall Moreno, sued the City of Dallas as well as Unknown John Doe Dallas Police Officers as a result of the alleged excessive

On December 16, 2013, Plaintiffs moved for leave of court to amend their complaint. Doc. 11. On December 17, the Court granted Plaintiffs' motion, and Plaintiffs' subsequently filed their Amended Complaint. Docs. 12, 13. On December 31, 2013, the City filed its present motion to dismiss. Doc. 15. Plaintiffs responded on February 4, 2014. Doc. 22. The City replied on February 25, 2014. Doc. 28. The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Erby Contr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

force used against Mr. Moreno. *Moreno v. City of Dallas*, No. 3:13-CV-4086-M. That case was later transferred to this Court and consolidated with the present matter. Doc. 31. Plaintiff Rita Moreno has filed a separate Amended Complaint. Doc. 42. This opinion concerns only the allegations contained within Plaintiffs Roland Moreno and Rhonda White's pleading.

for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

The City moves to dismiss all of Plaintiffs' claims against it. The Court evaluates each claim, in turn, below.

A.   *Withdrawn Claims*

Since filing their Amended Complaint, Plaintiffs have withdrawn their Fourteenth Amendment, conspiracy, and wrongful death causes of action. Pls.' Resp. 9–10. As such, the Court **GRANTS** Defendant's Motion with respect to these causes of action and hereby **DISMISSES** them **WITHOUT PREJUDICE**.

B.   *Section 1983—Municipal Liability*

Plaintiffs' remaining claim against the City is for municipal liability for alleged violations of Marshall Moreno's Fourth Amendment rights by Defendant Albert Sanchez. *See* Am. Compl. 3 Plaintiffs argue that Defendant Sanchez was acting "pursuant to either a *de facto* policy or practice, procedure, custom, and/or usage of the Police Department" when he allegedly "illegally seized, arrested and used excessive force" against Mr. Moreno. *Id.* at 5, 3 (emphasis in original). In particular, Plaintiffs claim the Dallas Police Department had "informal policies, habit(s), custom(s), and/or practice(s) . . . which allowed excessive force to be used in the apprehension, arrest, and/or

seizure of Mr. Moreno." *Id.* at 3. In addition, Plaintiffs aver the Dallas City Police Department "intentionally, knowingly, recklessly and/or with deliberate indifference to the rights of the inhabitants of the City failed to train and supervise on a continuing basis" Defendant Sanchez, and thereby proximately caused Mr. Moreno's death. *Id.* at 5, 3. Finally, Plaintiffs argue that the City's personnel systems and procedures do not appropriately evaluate or investigate police officers and discourage people from filing complaints against officers. *Id.* at 6–7. Consequently, Plaintiffs claim the City fails to protect its citizens from officers' misuse of force. *Id.* at 6.

Not surprisingly, the City strongly disagrees and insists Plaintiffs rely on legally erroneous assertions as well as conclusory remarks to support their claim. Consequently, the City insists Plaintiffs have failed to plead sufficient facts from which the Court can infer that the City either had a custom or policy that caused Defendant Sanchez to violate Marshall Moreno's constitutional rights, or that the City's failure to train or supervise its officers contributed to Marshall Moreno's death. Def.'s Mot. 5–17. As such, the City insists the municipal liability claim against it should be dismissed.

"Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). "Official policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 3:09–CV–798–B, 2010 WL 1779620, at *2 (N.D. Tex. April 9, 2010), *adopted by Davenport v. City of Garland*, No. 3:09–CV–798–B, 2010 WL 1779619 at *1 (N.D. Tex. April 30, 2010), (quoting *Piotrowski*, 237 F.3d at 579 (internal quotation marks omitted)). "[A] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with

'final policymaking authority' over the subject matter of the offending policy." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In other words, "[a]ctual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam). In addition, there must be a direct causal link between the policy (or custom) and the constitutional violation. *See Piotrowski*, 237 F.3d at 580. Thus, to state a claim for municipal liability a plaintiff must plead facts from which the Court could reasonably infer: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks omitted).

The Fifth Circuit has made clear "that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Piotrowski*, 237 F.3d at 579–80; *see also Weathered v. Dallas Cnty.*, No. 3:10–CV–781–B–BK, 2010 WL 4781300, at *3 (N.D. Tex. Nov. 3, 2010) ("Further, Plaintiff does not specify the offending city or county policies or customs or who the requisite policymakers, which is in violation of the Fifth Circuit's requirements."), *adopted by Weathered v. Dallas Cnty.*, No. 3:10–CV–781–B–BK, 2010 WL 4783024, at *1 (N.D. Tex. Nov. 23, 2010). Regrettably, Plaintiffs have failed to offer anything more than references to unspecified official policies or customs regarding the use of excessive force pursuant to which Officer Sanchez allegedly acted. For example, Plaintiffs insist that "[a]t all times pertinent hereto, Defendant Albert Sanchez acted consistent with informal and ratified policies, practices, procedures and/or customs permitting the use of excessive force in the course of a detention and/or arrest of the Dallas Police Department."

Am. Compl. 2 at ¶ 6. Similarly, Plaintiffs aver that "Officer Albert Sanchez illegally seized, arrested and used excessive force pursuant to the informal policies, habit(s), custom(s) and/or practice(s) of Defendant City of Dallas Police Department which allowed excessive force to be used in the apprehension, arrest, and/or seizure of Marshall Moreno." *Id.* at ¶ 9. Finally, Plaintiffs state that "[t]hese *de facto* policies, practices, procedures and/or customs were unconstitutional because they permitted and tacitly encouraged Dallas Police Department officers, to include Defendant Albert Sanchez, to unjustifiably and unreasonably violate the Fourth and Fourteenth Amendment rights of Mr. Moreno." *Id.* at ¶ 7. These allegations do not point to any identifiable policy or custom of allowing officers to use excessive force. Instead, they include only broad statements and conclusions of law. Consequently, are not entitled to a presumption of truth. *See Davenport*, 2010 WL 1779620, at *2 ("Plaintiff's conclusions, unsupported by facts, are not entitled to the presumption of truth.").

Plaintiffs' other allegations concerning the supervision and evaluation of police personnel are similarly deficient. Plaintiffs claim the Dallas Police Department has created a "system in which raters of officers are reluctant to rate employees according to their actual performance due to possible consequences both for themselves and the officer being rated." *Id.* at ¶ 18. Consequently, Plaintiffs insist the system "fails to adequately alert supervisors and other managerial personnel to an officer's actual performance and/or the existence of a need of assistance, training or other direct intervention . . . ." *Id.* What's more, the "mechanisms in place for the Dallas Police Department to investigate complaints as to police officer's actions (Internal Affairs Division) [are] deficient," and the Dallas Police Department "actively discourages complaints by limiting the time complaints may be accepted to 60 days from the date of the incident complained about." *Id.* at ¶¶ 19, 21.

Once again Plaintiffs fail to provide facts necessary to support their allegations. "[A] City

policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizen." *Piotrowski*, 237 F.3d at 581–82. However, a plaintiff still has to sufficiently plead the existence of such a policy. *See id.* Not only have Plaintiffs here failed to plead facts from which the Court could plausibly infer that Officer Sanchez was improperly supervised or evaluated, they have failed to offer any facts to support an inference of a widespread practice of improper supervision or evaluation. For example, Plaintiffs do not identify the City's "rating system" or discuss whether Officer Sanchez was rated by his superiors. Similarly, they fail to state whether individuals complained about Officer Sanchez prior to this incident, or whether he should have been or was investigated for improper conduct. Plaintiffs are also silent with respect to the rating, evaluation, or investigation of other officers who allegedly engaged in abusive behavior. As "it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case," *id.* at 582, the Court concludes that Plaintiffs' pleading does not support an inference of municipal liability based on failure to supervise or discipline. *See, e.g., Davenport*, 2010 WL 1779620, at *3 ("Without any facts to support these allegations, they are no more than conclusory allegations that the City ratified the officers' use of excessive force against him in this case by denying his IAD claim and generally failing either to train or supervise its officers.").

      As to their failure to train allegations against the City, Plaintiffs do offer some specifics. For example, Plaintiffs allege that City police "personnel are not given additional training except as part of an officer's individual Texas Commission on Law Enforcement Officer Standards and Education ('TCLEOSE') required continuing education. Consequently, officers are not provided additional training identified or reasonably calculated to lead to the needs of a particular officer or group of

officers based upon established needs." Am. Compl. 7 at ¶ 23. Further, Plaintiffs claim that "Police Department front line supervisors are not themselves adequately trained as to current, appropriate tactics and use-of-force for the circumstances such as that encountered by Defendant Albert Sanchez. Consequently, these supervisors are unprepared or at best ill-prepared to evaluate the actions of Defendant Albert Sanchez and the need for any type of action in response to his dismal performance." *Id.* at ¶ 24.

Though Plaintiffs do identify the training police personnel receive and allege its shortcomings, Plaintiffs' claim must still fail. "[I]n limited circumstances, a municipality can be held liable for failure to train its police officers." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). However, a plaintiff must "prove a direct causal link between the municipal policy and the constitutional deprivation" and "establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." *Id.* at 795–96. Indeed, "[l]iability attaches only when a final policymaker . . . *establishes* the municipal policy with respect to the action ordered." *Wright v. City of Garland*, No. 3:10–CV–1852–D, 2014 WL 1492356, at *7 (N.D. Tex. April 16, 2014) (emphasis added).

Unfortunately, Plaintiffs fail to plead facts that show that the City's final policymaker—allegedly the Chief of Police[3]—was deliberately indifferent to the "known or obvious consequences" that constitutional violations would result from lack of training, or that the City's alleged custom of insufficient training was the "moving force" behind Officer Sanchez's conduct. *See*

---

[3] The Court recognizes that the parties dispute whether, as a matter of law, Plaintiffs may allege that the Chief of Police is the final policymaker for the City. However, the Court need not address this matter because Plaintiffs' pleading is otherwise deficient and cannot withstand Defendant's motion to dismiss.

*Piotrowski*, 237 F.3d at 580 (quoting *Bryan Cnty.*, 520 U.S. at 407). Plaintiffs offer instead only general and conclusory remarks such as "[t]hese actions and inactions by the City of Dallas Police Department constitute deliberate indifference" and "were a contributing factor to the violation of Mr. Moreno's constitutional rights." Am. Compl. 8 at ¶ 24. Similarly they state:

> [t]hese de facto policies, practices, procedures, and/or customs exist due to the policymaker for the Dallas Police Department turning a blind eye to the constitutional violations which occur. These violations *would have placed* the policymaker on notice that he and his senior subordinates had failed to detect, identify, and correct the policy, practice, procedure and/or custom of the use of excessive force and the failure to provide appropriate personnel, training and/or supervisory responses.

*Id.* at ¶ 11 (emphasis added). Missing from these allegations are facts that the Chief of Police actually failed to train Officer Sanchez, or that Officer Sanchez acted as a result of the alleged ineffective training that he received. *See Davenport*, 2010 WL 1779620, at *3. Similarly, there are no facts that the Chief of Police "was aware of facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]" because of the lack of training and that he drew that inference. *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)(internal quotation marks omitted). These are critical failings. The Fifth Circuit has cautioned that the "causal link" and "culpability" requirements "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Snyder*, 142 F.3d at 796 (quoting *Bryan Cnty.*, 520 U.S. at 415).

Lacking sufficient factual support, Plaintiffs' assertions amount to no more than a "formulaic recitation of the elements" of a municipal liability claim. *Twombly*, 550 U.S. at 554–55. Accordingly, the Court **GRANTS** Defendant's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs'

claim for municipal liability against the City of Dallas.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant City of Dallas's Motion is **GRANTED** in its entirety. Plaintiffs Roland Moreno and Rhonda White's claims against the City of Dallas are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are permitted to replead within 21 days of this Order. Failure to file an amended pleading will result in a dismissal *with prejudice* of the Plaintiffs' claims against the City of Dallas.

**SO ORDERED.**

**SIGNED: July 16, 2014**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE