IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROLAND MORENO, Individually and | § | |
| RHONDA WHITE, Individually, and as | § | |
| Mother and Next Friend of M.M., a | § | |
| Minor and ROLAND MORENO as | § | |
| Representative of the Estate of | § | |
| MARSHALL MORENO, | § | |
| Deceased, and RITA MORENO, | § | |
| Individually | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-04106-B |
| | § | |
| CITY OF DALLAS, ALBERT SANCHEZ | § | |
| JEFFREY DEBEVEC, RYAN HALES, | § | |
| FRANCISCO NEVAREZ | § | |
| & UNKNOWN JOHN DOE DALLAS | § | |
| POLICE OFFICERS | § | |
| *Defendants* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS

TO THE HONORABLE COURT:

Plaintiff, Rita Moreno, asks the Court to deny Defendant City of Dallas' Motion to Dismiss.

Plaintiff adequately pleaded a claim under 42 U.S.C. §1983 to impose municipal liability against

the City of Dallas. Plaintiff has adequately pleaded a claim under not only the Fourth

Amendment, but also under the Fourteenth.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ 3

I.   STATEMENT OF THE PROCEEDINGS .................................................... 5

II.  FACTS ........................................................................................................ 5

III. STANDARD OF REVIEW .......................................................................... 6

IV.  STATEMENT OF ISSUES .......................................................................... 8

V.   SUMMARY OF ARGUMENT .................................................................... 8

VI.  ARGUMENT ............................................................................................... 9

   A.   Plaintiff's Complaint Identifies the Relevant Policymaker, Policies, and Customs that were a Moving Force Behind the Violation of Constitutional Rights. ...................................... 9

      1.   Plaintiff Identified the City's Final Policymaker. ...................................... 10

      2.   Plaintiff Adequately Pleaded an Official Policy or Custom. ....................................... 13

      3.   The Official Policy or Custom was the Moving Force behind the Constitutional Violation. ......................................................... 18

   B.   Plaintiff's Complaint states a Plausible Claim for Relief under the Fourteenth Amendment. ...................................................................... 20

VII. CONCLUSION ........................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**U.S. SUPREME COURT CASES**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................ 7, 8, 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 7

*City of Canton v. Harris*, 489 U.S. 378 (1989) ........................................................ 9, 14

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ............................................... 10, 11

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) .................................................. 21

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................................. 20

*Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989) ...................................................... 9

*Jones v. Bock*, 549 U.S. 199 (2007) .......................................................................... 7

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) ...................................................................................................... 7

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) .................................................. 20

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ................................................................... 21

*Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658 (1978). ............................... 9

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ................................................... 13

*Rochin v. California*, 342 U.S. 165, 172 (1952) ......................................................... 21

**U.S. COURTS OF APPEAL CASES**

*Duncan v. Nelson*, 466 F.2d 939 (7th Cir. 1972) ........................................................ 21

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) ...................................... 9, 22

*Gros v. City of Grand Prairie*, 181 F.3d 613 (5th Cir.1999) ........................................ 10

*Hishon v. King & Spaulding,* 467 U.S. 69 (1984) ........................................................ 7

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996) ............................................................. 20

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ................................................. 9

*Kane Enterprises v. MacGregor (USA) Inc.,* 322 F.3d 371 (5th Cir. 2003).................................. 7

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) ....................................................... 17, 18

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ................................................. 9, 16

*Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992)................................................... 21, 22

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005)......................................................... 14

*Sosa v. Coleman*, 646 F.2d 991 (5th Cir. 1981)............................................................................. 7

*Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989).................................................... 10

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir.2010)....................................... 12, 13, 15

## U.S. DISTRICT COURT CASES

*Barr v. City of San Antonio*, No. 06–CV–261, 2006 WL 2322861 (W.D. Tex. July 25, 2006)... 17

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*, 646 F.Supp.2d 860 (S.D. Tex. 2009)........................................................................................................................... 8

*Davenport v. City of Garland*, No. 3:09–CV–798–B ECF, 2010 WL 1779620 (N.D. Tex. Apr. 9, 2010)......................................................................................................................... 10

*Oporto v. City of El Paso*, No. EP–10–CV–110–KC, 2010 WL 3503457 (W.D. Tex. Sept. 2, 2010)......................................................................................................................... 18

*Starstead v. City of Superior*, 533 F.Supp. 1365 (W.D.Wis.1982)............................................. 17

## I.     STATEMENT OF THE PROCEEDINGS

1.     Plaintiff sued Defendants under 42 U.S.C. § 1983 and state law. The original case, 3:13-cv-04086-B, was filed October 9, 2013. This was consolidated into the present case on March 31, 2014.

2.     Plaintiff brings suit against the City of Dallas asserting Federal causes of action for deprivation of her and her son's Constitutional rights arising from the death of her son, Michael Moreno, who was killed as a result of the excessive unnecessary physical force and assault by officers of the Dallas Police Department. Defendant City of Dallas moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), to which motion this response is directed.

## II.     FACTS

3.     On or about October 9, 2012, Plaintiff was driving her son, Marshall Moreno, to the Timberlawn Hospital when she pulled into the Circle K gas station and convenience store located at 5527 E. R.L. Thornton Freeway Dallas, Texas 75223.  After pumping gas, she went into the store and asked the cashier to please call 9-1-1 for an ambulance to transport her son to the hospital because she was worried about getting him there safely—Mr. Moreno had a history of mental illness and was acting paranoid. The cashier told Plaintiff that they had an officer at the store. Plaintiff did not request the assistance of a police officer and instead was asking for an ambulance. Sanchez overheard this exchange.

4.     Sanchez then walked out to Plaintiff's mini-van and demanded that Mr. Moreno get out of the van with his arms behind his back. Mr. Moreno stated that he had done nothing wrong and asked why he was being arrested. Sanchez repeated his demand. Mr. Moreno then exited the car with his arms in the air. Sanchez then asked Mr. Moreno to put his hands behind his back and

reached for his handcuffs. Sanchez continued to order Mr. Moreno to put his hands behind his back. Confused and fearful, Mr. Moreno started backing away from Sanchez. Sanchez then tried to close the distance between himself and Mr. Moreno while holding his handcuffs. Mr. Moreno then ran from Sanchez.

5.     Sanchez scared Mr. Moreno off the Circle K property, across Winslow Avenue, and into the parking lot of a Shell service station across the street. On an embankment, Sanchez tackled Mr. Moreno and a struggle ensued. With the assistance of an unknown onlooker, Sanchez attempted to subdue Mr. Moreno. Additional officers of the Dallas Police Department began to arrive to the area. These officers included Jeffrey Debevec, Ryan Hales, and Francisco Nevarez and other unknown officers (hereinafter collectively referred to as "unknown John Doe Officers", "John Doe Defendants" or "John Doe Dallas Police Officers"). After Mr. Moreno was already handcuffed and defenseless, Sanchez and the John Doe Defendants jumped on top of him, beat and kicked him, bound his feet together, and at least one officer sprayed Mr. Moreno with pepper spray during the course of these events. Mr. Moreno was then transported to Baylor Hospital where he was pronounced dead.

6.     Plaintiff watched, unable to do anything, as Sanchez and these John Doe Defendants relentlessly beat, kicked, maced, and ultimately killed her son right in front of her.

7.     Plaintiff witnessed the assault and an excessive use of force as a result of Defendants' abuse of power. Plaintiff was also deprived of her son, who was living with her at the time, as a result of the acts of Sanchez and the John Doe Defendants' excessive use of force.

### III.    <u>STANDARD OF REVIEW</u>

8.     For purposes of a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and must take all facts pleaded as true. *Kane Enterprises v.*

*MacGregor (USA) Inc.,* 322 F.3d 371, 374 (5th Cir. 2003); *see also Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). Motions to dismiss under rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).

9.     A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court should dismiss under rule 12(b)(6), only if it can determine to a certainty that the plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint. *Hishon,* 467 U.S. at 73. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). When there are factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

10.     Further, the Supreme Court has repeatedly stated that 42 U.S.C. §1983 suits against municipalities are not subject to a heightened pleading standard. *Jones v. Bock*, 549 U.S. 199, 212-13 (2007); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).

11.     Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 677-78. The *Iqbal* Court explained that Rule 8 does not require "detailed factual allegations," but it just simply demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matters, which if accepted as true, "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly,* 550 U.S. at 556).

12.     The procedure requires the Court to engage in a two-step analysis. *See Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*, 646 F.Supp.2d 860, 864-865 (S.D. Tex. 2009). First, the Court should identify which statements are factual allegations and which are legal conclusions. *See Iqbal*, 129 S.Ct. at 1950. Second, the Court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *Id.* Based on this standard, Plaintiff's Complaint does set forth sufficient and detailed facts which support viable claims against the City of Dallas and entitle Plaintiff to relief; therefore, dismissal is not proper under Rule 12(b)(6).

## IV.     <u>STATEMENT OF ISSUES</u>

13.     Does the Complaint adequately plead a claim for municipal liability as to the City of Dallas?

14.     Does the Complaint adequately state a plausible claim for relief for under the Fourteenth Amendment?

## V.     <u>SUMMARY OF ARGUMENT</u>

15.     Plaintiff's Second Amended Complaint identifies the relevant policymaker as the Dallas Chief of Police, pleads facts showing knowledge and approval of: (1) a failure to adequately train officers in the use of force; (2) a policy of investigating instances of excessive force that insulates officers and encourages the use of excessive force, and; (3) a pattern and custom of officers using excessive force. Plaintiff states a direct casual link between these policies and customs and a deprivation of the victims' constitutional rights.

16.     The facts presented in Plaintiff's Complaint establish more than a mere possibility that a policy, practice, or custom existed, known to the relevant County policymaker—the Chief of Police—which caused the Constitutional deprivation alleged by Plaintiff. Further, the facts

presented in the Complaint establish more than a mere possibility that these policies and customs were the driving force behind the deprivations of legal rights pleaded by Plaintiff.

## VI.    ARGUMENT

17.    Liability of a governmental entity under 42 U.S.C. §1983 may be imposed in several ways. A plaintiff may assert liability based on: (1) an illegal official governmental policy or decision; (2) an illegal custom or practice within the government; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; (4) illegal conduct of an official with final policymaking authority; or (5) a municipality's ratification of illegal acts.[1] Here, Plaintiff pleads municipal liability based upon a practice or custom of inadequate training, inadequate supervision, a policy of investigation that encourages and ratifies officer's excessive use of force, and a practice or custom of using excessive force.

### A.    Plaintiff's Complaint Identifies the Relevant Policymaker, Policies, and Customs that were a Moving Force Behind the Violation of Constitutional Rights.

18.    At trial, a § 1983 claim against a municipality must contain three elements: a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567 , 578 (5th Cir. 2001) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). While these facts must be proven at trial, to survive a motion to dismiss the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Twombly*, 550 U.S. at 555–56).

---

[1] *See Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 694 (1978) (municipality may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."); *City of Canton v. Harris*, 489 U.S. 378, 385-87 (1989) (inadequacy of training may serve as basis for liability where failure to train amounts to deliberate indifference to rights of persons); *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 736-37 (1989) (municipality liable for isolated actions or decisions of its employee only where the employee has "final policymaking authority" such that decision represents official policy); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (finding municipal liability based on city's failure to reprimand or discharge officers after their egregious conduct).

### 1.      Plaintiff Identified the City's Final Policymaker.

19.     Plaintiff need not name the official policymaker in her pleadings, but need only state sufficient facts which would allow the Court to make such a determination. *See Davenport v. City of Garland*, No. 3:09–CV–798–B ECF, 2010 WL 1779620 at *3 (N.D. Tex. Apr. 9, 2010). In *Davenport*, the case relied on by Defendant, the court made this explicitly clear:

> Plaintiff fails to name the City's final policymaker who allegedly makes, adopts, or ratifies those practices, customs, policies, and procedures. *Nor does he state facts which would allow the Court to make such a determination.*

 *Id.* at *3 (emphasis added).

20.     Practically, the inquiry is not nearly as simple as Defendant suggests. An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated *exclusive* policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

21.     "Absent a contrary regulation or ordinance, a city council's or city manager's continuous refusal to exercise some theoretical authority to review a municipal official's policy decisions will, at some point, establish the municipal official as the final policymaking authority by custom or usage having the force of state law." *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 n. 2 (5th Cir.1999). In *Worsham*, the court specifically stated that 12(b)(6) dismissal is improper when based solely on a theoretical right of review because the plaintiff could demonstrate that such review is ineffective and meaningless. *Worsham*, 881 F.2d at 1341.

22.     In *Praprotnik*, the court stated that § 1983 could not serve its intended purpose if a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others. *Praprotnik*, 485 U.S. at 126.

23.     The City of Dallas appears to make just such an attempt to insulate itself from liability through a convoluted and theoretical right of review. The Dallas City Charter alludes to review of the Chief of Police's decisions and policies, this review is not mandatory and Plaintiff has yet to find an instance where any of the Chief of Police's decisions and policies have been challenged.

24.     If one looks at the Dallas City Charter, they would find in Ch. XII, §2:

> The chief of police shall:
>     1) have the immediate direction and control of the police department, subject to the supervision the city manager, and also subject to such rules, regulations, and orders as the city manager may prescribe, not inconsistent with the ordinances of the city, and shall promulgate all orders, rules, and regulations for government of the police force.

*See* Dallas, Texas, City Charter, Ch. XII, §2, *available at*

http://dallascityhall.com/government/DCH%20documents/01Chartr%20(1).pdf.

25.     If one then looks to the city manager provisions, they would find in Ch. VI, §2 that the city manager is not appointed for a fixed time, but rather serves at the discretion of the city council and may be removed at the "will and pleasure of the city council upon a two-thirds vote."

*See* Dallas, Texas, City Charter, Ch. VI, §2, *available at*

http://dallascityhall.com/government/DCH%20documents/01Chartr%20(1).pdf.

26.     Consequently, the policymaker appears to be the Chief of Police, but to the extent that the some of his decisions are not exclusive and subject to the review of the city manager, then the city council would be the final policymaker. Since the city manager is removable at any time by the city council, it appears that all of his decisions are reviewable.

27.     In *Zarnow*, the city's charter and actual practice was similar to the City of Dallas and the court determined that the city "impliedly delegated its policymaking authority to the chief of police." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir.2010).

28.     Accordingly, Plaintiff specifically stated the relevant policymaker in her Second Amended Complaint (Doc. 59):

> The City of Dallas employs the City Council form of government and has delegated to the Chief of Police the authority over the Dallas Police Department, including the authority to hire, fire, discipline employees, and *implement policies and procedures for the daily and long-term operations of the Police Department. For these purposes, the Chief of Police for the Dallas Police Department is the policymaker*. Alternatively, the final policymaker would be the Dallas City Council and/or Dallas City Mayor. But, only the Chief of Police appears to be making the policy decisions shaping the pattern and custom of Constitutional violations through the excessive use of force as set forth below. (Doc. 59 ¶12) (emphasis added).

29.     Defendant has not pointed out that Plaintiff has failed to name the correct policymaker, only that Plaintiff has named additional policymakers in the alternative. (Doc. 79, p. 7-8). As the Dallas City Charter indicates, the decision to obscure the identity of the final policymaker was not the Plaintiff's.

30.     Defendant also accuses Plaintiff of failing to support the assertion that the Chief of Police is the final policymaker with any facts. (Doc. 79, p. 8). Yet, Defendant quotes from Plaintiff's Second Amended Complaint the very paragraph that states these facts. Namely, that the "City of Dallas employs the City Council form of government and has delegated to the Chief of Police the authority over the Dallas Police Department, including the authority to hire, fire, discipline employees, and implement policies and procedures for the daily and long-term operations of the Police Department." (Doc. 79, p. 8).

31.     Also, as the following sections demonstrate, Plaintiff lists in detail several incidents where excessive force was used based on the current polices and the culture they perpetuate.

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS          Page 12**

These widely publicized examples are more than sufficient to make the policymaker aware of the problem. And when faced with these events, his lack of action cannot constitute anything but conscious indifference.

### 2.    Plaintiff Adequately Pleaded an Official Policy or Custom.

32.    There are two forms that an official policy may take: (1) "a policy statement formally announced by an official policymaker," or (2) "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168-69 (5th Cir.2010) (citation omitted). The latter may itself come in one of two forms: either "a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees" who are not policymakers, or "a *final policymaker* who took a single unconstitutional action." *Id.* at 169 (emphases in original).

33.    Where a plaintiff seeks to establish that an official municipal policy is unconstitutional, even a "single incident of unconstitutional conduct by municipal employees" pursuant to that policy may give rise to a § 1983 claim. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n. 6 (1986).

34.    Plaintiff adequately pleads three policies or customs sufficient to satisfy this second element, all with factual support. First, the failure to adequately train, supervise, and monitor police officers in their use of excessive force. Second, a policy of investigating instances of excessive force in a manner that insulates officers, ratifies the use of excessive force, and sends a clear message that Dallas Police officers will rarely be held responsible for the use of excessive force. Third, a custom of using excessive force that the Dallas Chief of Police was aware of and chose not to remedy.

### a) The Dallas Chief of Police Failed to Train his Officers in the Appropriate Use of Force.

35.     To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

36.     In *Canton*, the Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. *Canton*, 489 U.S. at 390, n. 10. In analyzing a failure to train claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Canton*, 489 U.S. at 390-91.

37.     It is also possible for a Plaintiff to prevail under the single incident exception if a Plaintiff proves that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). While this is a narrow exception, given the certainty that officers will encounter situations where force must be used, the Chief of Police and City are required to ensure the officers are trained on the appropriate use of force.

38.     Plaintiff has adequately pleaded that the current policy of training officers on use of force every two years is patently insufficient. (Doc. 59 ¶ 16 and Exhibit I). Plaintiff listed a non-exhaustive list of incidents sufficient to demonstrate the City's training procedures are inadequate and these continuing incidents involving the excessive use of force demonstrate an obvious lack of training. (Doc. 59 ¶¶ 13-15). That the Chief of Police himself has recently publicly acknowledged the need to increase this training from every two years to every two

months further indicates the City's conscious disregard for the constitutional rights of its citizens. (Doc. 59 ¶ 16 and Exhibit I). The lack of evidence that this has been done indicates the Dallas Chief of Police's conscious indifference still continues.

39.     This lack of training was one of the driving forces behind Mr. Moreno's death. As the sample of incidents demonstrate, police officers in the City of Dallas rush into situations and use any amount of force they deem necessary. (Doc. 59 ¶¶ 13-15). Here, in this case, Mr. Moreno, who had a history of mental illness, was acting paranoid. (Doc. 59 ¶ 7). Ms. Moreno was worried she could get her son to the hospital safely and wanted to call an ambulance to take him. (Doc. 59 ¶ 7). Though there were several officers involved in the assault on Mr. Moreno, not one intervened to stop the attack. (Doc. 59 ¶ 9).

40.     Mr. Moreno was an unarmed non-threatening scared individual that attempted to flee from an off-duty officer acting to protect the property of his employer. (Doc. 59 ¶¶ 7-8). Several Dallas Police officers jumped on top of Mr. Moreno, beat, and kicked him, ultimately causing Mr. Moreno's death. (Doc. 59 ¶ 9). While a single rogue officer's actions may be insufficient to demonstrate a lack of training, the fact that four officers collectively engaged in beating and kicking an unarmed man to death demonstrates an abject failure by the Chief of Police to train his officers on the reasonable use of force. (Doc. 59 ¶ 9).

> ### b) The Policies Implemented by the Chief of Police for Investigating Instances of Excessive Force Ratify and Encourage the Use of Excessive Force.

41.     A pattern of conduct is only necessary where the municipal actors are not final policymakers. *Zarnow*, 614 F.3d at 169. But a single unconstitutional policy by an official policymaker is sufficient to demonstrate an unconstitutional action where it is done by an official policymaker. *Id.*

42.     Liability under § 1983 is supported by a facially innocuous policy, if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579.

43.     Plaintiff pleaded that the policymaker having the authority to implement policies and procedures for the daily and long-term operations of the Police Department was, and is, the Dallas Police Chief. (Doc. 59 ¶ 12).

44.     In addition to the failure to train officers in the proper use of force, the Dallas Police Chief has promulgated polices that ratify and encourage the excessive use of force. Plaintiff specifically points out facially innocuous policies promulgated with deliberate indifference to the obvious consequences of ratifying and encouraging the use of excessive force:

1. The current policy of waiting 72 hours before giving a sworn statement in an officer-involved killing has perpetuated the custom of covering up the excessive use of force and in turn leads to an environment where the use of excessive force often goes unaddressed. (Doc. 59 ¶17).

2. The investigative team is comprised of other Dallas police officers, instead of unbiased investigators and the Dallas Police officer investigators generally give credit to the police officers testimony and disregard contrary witness statements. (Doc. 59 ¶¶ 15, 17).

3. Until 2012, the use of excessive force was only tracked for shootings, taser use, and pepper ball use. (Doc. 59 ¶ 13(i) and accompanying exhibit). Up until this point, any other uses of force were typically documented in the arrest report, making them extremely difficult to track and quantify. (Doc. 59 ¶ 13(i) and accompanying exhibit).

45.     Plaintiff stated that these policies result in investigations where officers are cleared by these internal investigators, unless there is incontrovertible evidence proving beyond any doubt that the officer used excessive force. (Doc. 59 ¶ 15). The internal investigators are advocates for the officers and the 72-hour waiting period is used to interrogate witnesses and make the best case possible for the officers. (Doc. 59 ¶ 15). This is further indicated by a specific instance where the investigation initially concluded that the officer did nothing wrong, but evidence later surfaced that demonstrated the investigators' purpose was not to ascertain the facts, but rather protect the officer.  (Doc. 59 ¶ 15(a) and accompanying exhibit).

### c) There is a Pattern and Custom of Unconstitutional Conduct that the Chief of Police is Actually Aware of and has Responded to with Deliberate Indifference.

46.     In her Second Amended Complaint, Plaintiff lists several specific incidents indicating a custom of excessive force, but these are only some of the most widely publicized incidents. (Doc. 59 ¶¶ 13-16). Defendants cite to *Pineda* for the proposition that eleven incidents cannot as a matter of law establish a pattern. (Doc. 79, pp. 10-11) However, *Pineda* is distinct from the present case for two very important reasons.

47.     First, the plaintiffs in *Pineda* were appealing the decision to grant the defendants' summary judgment motion.  *Pineda v. City of Houston*, 291 F.3d 325, 327 (5th Cir. 2002). The defendants in *Pineda* had already produced 5,000 offense reports in discovery. *Id.* at 329.

48.     Courts that have addressed this matter at the motion to dismiss stage have found fewer incidents sufficient to deny the defendants motion. *See Barr v. City of San Antonio*, No. 06–CV–261, 2006 WL 2322861 at *4-5 (W.D. Tex. July 25, 2006) (finding that a pattern was alleged by citing four prior similar lawsuits over unlawful arrests and use of excessive force); *Starstead v. City of Superior*, 533 F.Supp. 1365, 1369 (W.D.Wis.1982) (finding that a pattern was alleged by

describing a systematic pattern of misuse of police dogs and citing five separate incidents involving seven persons).

49.     Second, the plaintiffs in *Pineda* were alleging a pattern of unconstitutional searches, and the court found that these eleven incidents were insufficient to impute actual knowledge on the part of the city's policymakers. *Id.* at 330. Importantly, 12 of the 13 warrantless searches were clearly justified by the consent of the owner of the home or by exigent circumstances and were not unconstitutional. *Id.* at 329, note 12.

50.     In the case at bar, Plaintiff has alleged eight incidents. (Doc. 59 ¶¶ 13-15). And more importantly, as all of these were deemed newsworthy by the local papers, there is little uncertainty that the city's policymaker was aware of these incidents. (Doc. 59 ¶¶ 13-15 and accompanying exhibits.) Any lingering doubts should be dismissed by the fact that the Dallas Police Chief has publicly responded to some of these incidents, clearly indicating his knowledge. (Doc. 59 ¶13(g) and accompanying exhibit).

51.     The second important difference is the nature of the allegation. Plaintiff is alleging a pattern of unconstitutional use of deadly force, not warrantless searches. The excessive use of deadly force is egregious and reduces the frequency and pattern length necessary to establish a pattern. *Oporto v. City of El Paso*, No. EP–10–CV–110–KC, 2010 WL 3503457, at *9 (W.D. Tex. Sept. 2, 2010).

### 3.    The Official Policy or Custom was the Moving Force behind the Constitutional Violation.

52.     The unfettered use of excessive force by Dallas police officers has been allowed to continue, unchecked and without regard for the rights of the victims and their families. In the past, during the numerous occasions where excessive force has lead to the death of an individual, mothers were not watching in horror as their child was beaten to death by an agent of the state.

Indeed, cases such as these—where police officers are mercilessly beating an innocent man in front of his mother—are rare. However, it is an important indication of just how brazen Dallas police officers have grown in their use of excessive force.

53.     Plaintiff has detailed specific allegations in her Second Amended Complaint that demonstrate the brazenness of the Dallas Police officers in this incident directly flowed from the City's hands-off approach to training officers on the use of force, as well as an investigatory policy that fails to hold officers accountable for their excessive use of force.  (Doc. 59 ¶¶13-21). Plaintiff pleaded that the relevant policymaker had actual knowledge of these and other events. (Doc. 59 ¶13(g) and ¶16). The public statements of the Dallas Chief of Police acknowledging a need for different polices, combined with a lack of any substantive change further carries the effect of a policy, a policy that suggests to officers that they should pay lip-service to the excessive use of force, but in practice use whatever level of force they choose. (Doc. 59 ¶13(g) and ¶16).

54.     At the time Mr. Moreno was killed, there was no independent investigative team, no separate report detailing the use of force (and consequently no effective way to review or track officers' use of force), and they had 72 hours to gather all of the evidence, and make sure their account of what happened matched the evidence. (Doc. 59 ¶¶16-18). These policies contributed to the unconstitutional use of force against Mr. Moreno in this case.

55.     The culture of using excessive force is evidenced through the repeated instances where officers have used excessive force. The Dallas Chief of Police was aware of this culture, and failed to make any substantive changes to counteract officer's unbridled use of force. (Doc. 59 ¶¶13-21). The culture and polices were together and independently driving forces behind Mr. Moreno's death.

56.     Plaintiff need not marshal all of her evidence, but only provide "a short and plain statement of the claim showing the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (applying Fed. R. Civ. P. 8(a)(2)). At this stage, Plaintiff's Second Amended Complaint is more than sufficient.

### B.     Plaintiff's Complaint states a Plausible Claim for Relief under the Fourteenth Amendment.

57.     The violations of Mr. Moreno's Fourth Amendment rights are also actionable against the City of Dallas by virtue of the Fourteenth Amendment, as codified in §1983. *See e.g., McDonald v. City of Chicago*, 130 S. Ct. 3020, 3076 (2010). Defendant relies on *Graham v. Connor*, for support that all excessive force claims fall under the Fourth amendment. (Doc. 79, p. 16). The court in *Graham* held, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, in *Graham*, the police officers had reasonable suspicion to make an investigative stop. *See id* at 389.

58.     According to the Fifth Circuit, a different rule applies when there is no probable cause:

> . . . the use of nearly any amount of force may result in a constitutional violation when [an individual] "poses no threat to the officers' safety or that of others, and [the individual] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (quoting *Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983)).

This is particularly the case, when the person injured was not subject to arrest. *Id.* at 435. Similar to the case in *Ikerd*, Mr. Moreno, "was not under arrest and posed no threat to anyone" at the time Sanchez, a Circle K security guard, ordered him out of the vehicle and scared him off the property. *Id.* Consequently, as stated by the Court in *Ikerd*, Mr. Moreno has suffered injuries

under both the Fourth Amendment and under the Fourteenth Amendment's substantive due process clause. (Doc. 59 ¶ 7-8).

59.    Plaintiff is clearly supported in her claim for loss of income that Mr. Moreno contributed to her household prior to his death. *Rhyne v. Henderson County*, 973 F.2d 386, 381 (5th Cir. 1992). In addition to this, Plaintiff has a claim against the City of Dallas for the violation of her Fourteenth Amendment rights that occurred as she watched several Dallas police officer, acting in accordance with the policies and customs of the Dallas Police Department, beat her son to death in violation of her constitutional rights.

60.    The exact nature of liberty guaranteed by the due process clause of the Fourteenth Amendment has not been clearly defined. However, it denotes more than mere freedom from bodily restraint. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Liberty encompasses the right of an individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to establish a home, to bring up children, and to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Id.*

61.    The Due Process Clause not only restrains undue incursions on personal security, but also restrains state activities that are fundamentally offensive to "a sense of justice" or "shock the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). The "touchstone of substantive due process is protection against government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Further, these violations need not always be premised on physical force. *Duncan v. Nelson*, 466 F.2d 939, 945 (7th Cir. 1972). While some courts have held a bystander, who is not the object of police action, cannot recover for emotional injuries arising out of her own

constitutional violations, Plaintiff respectfully submits that these cases were decided under sufficiently different facts. *See e.g.*, *Grandstaff*, 767 F.2d at 172.

62.      Here, the violation against Plaintiff, apart from the damages flowing from the death of her son, did not involve physical force against her own body, but the assault on her son is fundamentally offensive to a sense of justice and shocks the conscious. Should the Court determine that no independent constitutional violation occurred, Plaintiff maintains that her loss of society and companionship and loss of household support income are recoverable as damages arising directly out of Mr. Moreno's fourth amendment violations. *Rhyne,* 973 F.2d at 381; *Grandstaff*, 767 F.2d at 172.

## VII.   CONCLUSION

63.      Plaintiff adequately pleaded a claim under 42 U.S.C. §1983 to impose municipal liability against the City of Dallas. Plaintiff has explained the policies that promote the excessive use of force by Dallas police, the culture of using excessive force that continues, and how the polices and culture were responsible for Mr. Moreno's death. Plaintiff has also adequately pleaded a claim under not only the Fourth Amendment, but also under the Fourteenth. Thus, Defendant's Motion to Dismiss should, in all respects, be denied.

64.      Plaintiff respectfully prays that Defendant's Motion to dismiss be denied and for such other further relief, both general and special to which she may be justly entitled.

Respectfully submitted,

Law Office of William Chu

By: _____/s/ William Chu_____
          William Chu
Texas Bar No.:  04241000
4455 LBJ Freeway, Suite 909
Dallas, TX 75244
Telephone: (972) 392-9888
Fax: (972) 392-9889
wmchulaw@aol.com
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2015, the foregoing document was filed electronically with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system will provide a "Notice of Electronic Filing" to all counsel by electronic means.

/s/ William Chu_____