UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROLAND MORENO, Individually and as Representative of the Estate of Marshall Moreno, Deceased; RHONDA WHITE, Individually and as Mother and Next Friend of M.M., a Minor; and RITA MORENO, Individually, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-4106-B |
| CITY OF DALLAS, ALBERT SANCHEZ, JEFFREY DEBEVEC, RYAN HALES, FRANCISCO NEVAREZ & UNKNOWN JOHN DOE DALLAS POLICE OFFICERS, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendant City of Dallas' Motion to Dismiss Plaintiff Rita Moreno's

Second Amended Complaint (doc. 79), filed on February 10, 2015. For the reasons stated below,

Defendant's Motion is **GRANTED**.

## I.

## BACKGROUND[1]

This case arises out of the death of Marshall Moreno. Plaintiff Rita Moreno, mother of

---

[1] The Court draws its factual account from the allegations contained in Plaintiff Rita Moreno's Second Amended Complaint (doc. 66), as well as from the exhibits incorporated therein by reference. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

Marshall Moreno ("Mr. Moreno") filed suit against Defendants the City of Dallas ("the City"), Officer Albert Sanchez ("Officer Sanchez"), Officer Jeffrey Debevec ("Officer Debevec"), Officer Ryan Hales ("Officer Hales"), Officer Francisco Nevarez ("Officer Nevarez"), and other unknown officers ("Unknown John Doe Officers") pursuant to 42 U.S.C. § 1983 for alleged violations of her and Mr. Moreno's constitutional rights under the Fourth and Fourteenth Amendments. Additionally, Plaintiff has sued the Unknown John Doe Officers for intentional infliction of emotional distress.

A.    *Factual Background*

On or about October 9, 2012, Plaintiff was driving her son, Marshall Moreno, to the Timberlawn Hospital in Dallas, Texas, when she stopped at a gas station and convenience store. Doc. 66, Pl.'s Second Am. Compl. ("Compl.") ¶ 7. Because Plaintiff knew that Mr. Moreno had a history of mental illness, and because she determined that he was behaving in a paranoid manner at the time, she went into the convenience store and requested that the cashier call "for an ambulance to transport her son to the hospital," explaining that "she was worried about getting him there safely." *Id.* In response, the cashier informed Plaintiff that a Dallas police officer—Officer Sanchez— was present at the store. *Id.* However, Plaintiff did not request the assistance of a police officer, as she instead sought an ambulance. *Id.*

Plaintiff alleges that Officer Sanchez overheard this exchange and subsequently walked out of the store and proceeded to Plaintiff's vehicle. *Id.* ¶¶ 7–8. Plaintiff asserts that, without probable cause, Officer Sanchez demanded that Mr. Moreno exit the vehicle with his arms behind his back. *Id.* ¶ 8. Mr. Moreno allegedly asked Officer Sanchez why he was being arrested and stated that he had done nothing wrong. *Id.* Officer Sanchez repeated his demand, and Mr. Moreno then exited the

vehicle. *Id*. Officer Sanchez again asked Mr. Moreno to put his hands behind his back and reached for his handcuffs. *Id*. Confused as to why he was being arrested, Mr. Moreno allegedly began backing away from Officer Sanchez. *Id.* This prompted Officer Sanchez to try "to close the distance between himself and Mr. Moreno while holding his handcuffs in plain view." *Id*. Mr. Moreno then ran from Officer Sanchez. *Id.*

Officer Sanchez allegedly chased Mr. Moreno from the gas station, across an adjacent street, and into the parking lot of another gas station. *Id.* ¶ 9. He then tackled Mr. Moreno, and a struggle ensued. *Id*. Officer Sanchez allegedly sought the assistance of an unknown onlooker, who weighed approximately 250 pounds, to lay on Mr. Moreno. *Id*. At that moment, additional Dallas Police Officers—including Officers Debevec, Hales, and Nevarez, as well as the Unknown John Doe Officers—arrived at the scene. *Id*. Plaintiff alleges that, although Mr. Moreno was already defenseless, the Unknown John Doe Officers "jumped on top of him, beat and kicked him, bound his feet together, and at least one officer sprayed Mr. Moreno with pepper spray." *Id*. Mr. Moreno was then transported to a hospital, where he was pronounced dead. *Id*.

Plaintiff avers that she watched, without being able to do anything, as the Defendants beat, kicked, maced, and ultimately killed her son. *Id.* ¶ 10.

B.      *Procedural Background*

Plaintiff originally filed her Section 1983 claim against Defendants City of Dallas and Unknown John Doe Officers on October 9, 2013. Doc. 1, Rita Moreno Orig. Compl., *Moreno v. City of Dall.*, No. 3:13-CV-4086-B (N.D. Tex. 2013). The day after Plaintiff filed suit, Roland Moreno, individually and as representative of the Estate of Marshall Moreno, and Rhonda White, individually and as mother and next friend of minor M.M., filed a separate suit against Defendants Officer

Sanchez and the City of Dallas, seeking recovery for the alleged excessive force used against Mr. Moreno. Doc. 1, Roland Moreno Orig. Compl., *Moreno v. Sanchez*, No. 3:13-CV-4106-B, (N.D. Tex. 2013). On March 7, 2014, Plaintiff filed a motion to consolidate the two cases. Doc. 7, Rita Moreno Mot. to Consolidate, *Moreno v. City of Dall.*, No. 3:13-CV-4086-B, (N.D. Tex. 2013). The motion was granted, and the cases were consolidated on March 31, 2014 under the case styled and numbered *Moreno v. Sanchez*, No. 3:13-CV-4106-B.

After obtaining leave of Court, Plaintiff filed her First Amended Complaint on July 9, 2014, naming the City of Dallas and Officers Debevec, Hales, Nevarez, and Unknown John Doe Officers as defendants. Doc. 42, Am. Compl. After again seeking leave of Court, Plaintiff submitted her Second Amended Complaint on November 11, 2014, adding Officer Sanchez as a defendant. Doc. 66, Second Am. Compl. ("the Complaint" or "Compl.").

The City filed the present Motion to Dismiss pursuant to Rule 12(b)(6) on February 10, 2015, seeking to dismiss Plaintiff's claims against it. Doc. 79. Plaintiff submitted her Response (doc. 81) on March 4, 2015, to which the City replied (doc. 85) on March 20, 2015. As such, the Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most

favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

In its Motion to Dismiss, the City moves to dismiss the Section 1983 claim Plaintiff has asserted against it. First, the City argues that Plaintiff's allegations are insufficient to support municipal liability on this claim. Doc. 79, Def.'s Mot. to Dismiss ("Def.'s Mot.") 6–15. In addition, the City challenges the viability of Plaintiff's claim under the Fourteenth Amendment. *Id.* at 16. Accordingly, the Court evaluates the sufficiency of Plaintiff's claims against the City, in turn, below.

A.      *Section 1983—Municipal Liability*

Plaintiff alleges that the City is liable for the incident that resulted in the death of Mr. Moreno because "the custom and practice of the City of Dallas encourages and ratifies the use of excessive force." Compl. ¶ 24. Specifically, Plaintiff argues that Mr. Moreno's death resulted from the City's (1) custom of using excessive force, (2) policy of investigating instances of excessive force that insulates officers and encourages the use of excessive force, and (3) failure to adequately train officers against the use of excessive force. *Id.* ¶¶ 13–15, 20, 21, 24; Doc. 81, Pl.'s Resp. ¶ 15.

"[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, municipal liability under Section 1983 "results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). To establish municipal liability, the plaintiff must identify three elements: (1) an official policy or custom, of which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski*, 237 F.3d at 578).

The City argues that Plaintiff's claim must be dismissed because Plaintiff's "well-pleaded factual allegations do not permit this Court to draw a reasonable inference that the City is liable for its police officers' alleged wrongdoing," adding that the Complaint omits allegations necessary to show that the City's customs or policies can support municipal liability. Def.'s Mot. 1. Specifically, the City contends that Plaintiff's claim must be dismissed for failing to plead (1) the identity of the policymaker, (2) facts supporting the existence of an offending custom or policy, (3) sufficient facts to allow an inference of liability under a failure to train theory, and (4) facts indicating the deliberate

indifference of the policymaker. *Id.* at 6–15. The Court addresses the parties' respective arguments as to each of these matters, in turn, below.

    1.    <u>Policymaker</u>

In its Motion to Dismiss, the City first claims that Plaintiff's Section 1983 claim must be dismissed because Plaintiff fails to identify a final policymaker who enacted the policies governing the Defendants' behavior toward Mr. Moreno. Def.'s Mot. 7. The City objects to Plaintiff's conclusory listing of a range of individuals and entities "that may be, or 'appear' to be, a policymaker." *Id.* at 8 (quoting Compl. ¶ 12).

Because a municipality is not subject to *respondeat superior* liability, the acts of individual employees of the municipality do not create liability under Section 1983 unless a policymaker adopted a policy that resulted in a constitutional violation. *Pineda*, 291 F.3d at 328. Whether a city official is a policymaker is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). A policymaker is one who has "the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125. "[P]olicymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). Policymakers "are not supervised except as to the totality of their performance." *Id.* In addition, "[t]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official." *Id.* The Fifth Circuit "has long distinguished between final decisionmaking authority and final policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to

the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

If the governing body chooses to delegate policymaking authority to a city official, it does so in either one of two ways. *Bennett*, 728 F.2d at 769. It may delegate policymaking power by an express statement, job description, or other formal action. *Id.*; *Swann v. City of Dall.*, 922 F. Supp. 1184, 1204 (N.D. Tex. 1996). It may also, "by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Bennett*, 728 F.2d at 769. In essence, "[t]he governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." *Webster*, 735 F.2d at 841 (quoting *Bennett*, 728 F.2d at 769).

In light of this standard, the Court considers whether Plaintiff has alleged the existence of such a policymaker. In her Complaint, Plaintiff identifies the Chief of Police as the final policymaker of the Dallas Police Department. Compl. ¶ 12. Although she then adds that, in the alternative, "Dallas City Council and/or Dallas City Mayor" may be the final policymakers, she subsequently specifies that "only the Chief of Police appears to be making the policy decisions shaping the pattern and custom of Constitutional violations through the excessive use of force . . . ." *Id.*

The City first argues that Plaintiff fails to definitively identify a policymaker, as she instead lists various individuals and entities without clearly asserting who creates the policies in question. Def.'s Mot. 8. Responding to this argument, Plaintiff attempts to clarify that "the policymaker appears to be the Chief of Police, but to the extent that some of his decisions are not exclusive and subject to the review of the city manager, then the city council would be the final policymaker." Pl.'s Resp. 11. In support, she points to the Dallas City Charter, which provides that the Chief of Police

shall "have the immediate direction and control of the police department, subject to the supervision [of] the city manager, and also subject to such rules, regulations, and orders as the city manager may prescribe . . . ." *Id.* (quoting Dallas City Charter, Ch. XII § 2).

The City further argues that, to the extent Plaintiff asserts that the Chief of Police is the final policymaker, such claim is unsupported by factual allegations. Def.'s Mot. 8. In her Response, Plaintiff disagrees and insists that the following allegations from her Complaint are sufficient to support an inference that the Chief of Police is the final policymaker:

> The City of Dallas employs the City Council form of government and has delegated to the Chief of Police the authority over the Dallas Police Department, including the authority to hire, fire, discipline employees, and implement policies and procedures for the daily and long-term operations of the Police Department.

Pl.'s Resp. 12 (quoting Compl. ¶ 12). The City, in turn, maintains that such statements remain conclusory in nature and offer no facts indicating an actual delegation of policymaking authority by the City Council. Doc. 85, Def.'s Reply 3.

To the extent Plaintiff alleges that the Dallas Chief of Police is the final policymaker for the Dallas Police Department, such an assertion is insufficient; this Court has held that, as a matter of law, the Dallas City Charter does not characterize the Chief of Police as the final policymaker for purposes of Section 1983 liability, as his actions are subject to review by the City Manager, who is in turn supervised by the City Council. *See Mosser v. Haney*, No. 3:03-CV-2260-B, 2005 WL 1421440, *4 (N.D. Tex. June 17, 2005) ("[T]he Chief of Police is not the policymaker for Dallas's police department, as he remains subject to the rules and supervision of the City Manager"); *see also Curtis v. Arapaho Venture Ltd.*, No. 3:03-CV-2099-H, 2004 WL 2248236, at *3 (N.D. Tex. Oct. 5, 2004) ("The Dallas City Charter establishes that the Dallas City Council retains final authority for

promulgating all police regulations and does not delegate policy-making authority to the Chief of Police").

However, it is conceivable that, following the decisions listed above, the City Council delegated policymaking authority for the Dallas Police Department to the Chief of Police. Indeed, one court addressing this issue declined to dismiss a plaintiff's Section 1983 claim in light of plaintiff's allegation that Dallas City Councilman Dwaine Caraway confirmed that the City Council had delegated policymaking authority for police officer training to the Dallas Chief of Police. *See Flanagan v. City of Dall.*, 48 F. Supp. 3d 941, 951 (N.D. Tex. 2014). Unfortunately, unlike the plaintiff in *Flanagan*, Plaintiff here has neglected to provide factual assertions sufficient to create a reasonable inference that the Chief of Police has been delegated certain authority. Although Plaintiff's Complaint indicates that the City Council "has delegated to the Chief of Police the authority over the Dallas Police Department, including the authority to hire, fire, discipline employees, and implement policies and procedures for the daily and long-term operations of the Police Department," this statement is no more than a conclusion that could only be reached by considering facts—absent from the Complaint—related to how, when, and by whom a specific authority was delegated. Additionally, despite defending the adequacy of the pleadings described above, Plaintiff nevertheless acknowledges that the City Charter continues to make the Chief of Police's decisions subject to the review of the City Manager. Pl.'s Resp. 11–12. She further concedes that "it appears that all of [the City Manager's] decisions are reviewable" by the City Council. *Id.* at 11. Due to the absence of clear factual assertions indicating the delegation of authority to the Chief of Police, Plaintiff's Complaint is deficient in asserting that the Chief of Police is the final policymaker for the Dallas Police Department.

The Court next turns to Plaintiff's alternative allegation that "the final policymaker would be the Dallas City Council and/or Dallas City Mayor." Compl. ¶ 12. This statement, however, is unsupported by facts; indeed, it is not even conclusory, but is rather speculative and uncertain. However, assuming, *arguendo*, that Plaintiff had firmly identified the City Council as the final policymaker, Plaintiff's allegations would nevertheless remain deficient, as she has neglected to "connect the policy to the governmental entity itself." *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M, 2014 WL 3893907, at *5 (N.D. Tex. Aug. 6, 2014). Specifically, Plaintiff must identify the policy that the policymaker adopted and demonstrate that the application of this policy resulted in the injuries in question. *Id.*

Here, however, Plaintiff does not allege that the City Council implemented a policy that resulted in the incident involving Mr. Moreno. In fact, Plaintiff's Complaint is quick to limit the policymaking authority of the City Council or Mayor, as she insists that "only the Chief of Police appears to be making the policy decisions shaping the pattern and custom of Constitutional violations through the excessive use of force . . . ." Compl. ¶ 12. Moreover, in her Response, Plaintiff further distances herself from her Complaint's suggestion that the City Council may be the policymaker, as she clarifies that the relevant policymaker is the Chief of Police, and further argues the following:

> 16. The facts presented in Plaintiff's Complaint establish more than a mere possibility that a policy, practice, or custom existed, known to the relevant County policymaker—the Chief of Police—which caused the Constitutional deprivation alleged by Plaintiff.
>
> . . .
>
> 43. Plaintiff pleaded that the policymaker having the authority to implement policies and procedures for the daily and long-term operations of the Police Department was,

and is, the Dallas Police Chief.

. . .

50. . . . Any lingering doubts [regarding the policymaker's deliberate indifference] should be dismissed by the fact that the Dallas Police Chief has publicly responded to some of these incidents, clearly indicating his knowledge.

Pl.'s Resp. 8–9, 16, 18. Thus, even if Plaintiff's pleadings could be construed as identifying the City Council as the relevant policymaker, the Complaint fails to establish a connection between such policymaker and the policies at issue.

In light of the above, the Court concludes that Plaintiff has failed to identify a final policymaker for the Dallas Police Department. Although Plaintiff's Section 1983 claim against the City is subject to dismissal for failing to identify such a policymaker, the Court nonetheless considers the parties' arguments on the sufficiency of Plaintiff's allegations regarding the remaining elements necessary to establish municipal liability.

2.     Official Policy or Custom

Next, the City argues that Plaintiff's claim must be dismissed for insufficiently pleading facts to support the existence of an official municipal policy. Def.'s Mot. 8.

"Official policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 3:09-CV-798-B, 2010 WL 1779620, at *2 (N.D. Tex. Apr. 9, 2010), *adopted by* 2010 WL 1779619, at *1 (N.D. Tex. Apr. 30, 2010) (quoting *Piotrowski*, 237 F.3d at 579); *Webster*, 735 F.2d at 841. "[A] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending

policy." *Id.* (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In other words, "[a]ctual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster*, 735 F.2d at 841. Actual knowledge can be demonstrated by discussions of the practice or custom held at council meetings. *Bennett*, 728 F.2d at 768. Constructive knowledge, in turn, "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.*

In her Complaint, and as clarified in her Response, Plaintiff pleads the existence of (i) a custom and practice of excessive use of force, (ii) a policy of investigating instances of excessive force that insulates officers and encourages the excessive use of force; and (iii) a failure to train, supervise, and monitor officers in the use of force. Compl. ¶¶ 20–21; Pl.'s Resp. 8, 13.

i.      *Custom of Excessive Use of Force*

In her Complaint, Plaintiff avers that a pattern of excessive use of force "indicates a custom of the Dallas Police Department that encourages officers to act with any amount of force they choose, without any regard for the Constitutional rights of the person they are attempting to detain." Compl. ¶ 13. To establish a custom, Plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citation omitted). Prior incidents used to establish a pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842. Furthermore, prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific

- 13 -

violation in question. That is, notice of a pattern of similar violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (citations omitted).

There is no bright line rule for determining how many prior incidents are sufficient to establish a pattern of excessive force. It is generally accepted that a single incident does not show a policy or custom, nor is a single incident sufficient to infer a policy based on customary practice. *Wright v. City of Dall.*, No. 3:09-CV-1923-B, 2010 WL 3290995, at *3 (N.D. Tex. July 19, 2010), *adopted by Wright v. City of Dall.*, No 3:09-CV-1923-B, 2010 WL 3291816, at *1 (N.D. Tex. Aug. 19, 2010). The number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies among district courts in the Fifth Circuit. *See Barr v. City of San Antonio*, No. SA-06-CA-0261, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (holding that a pattern was alleged when the City had been named as a defendant in four similar lawsuits); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *12–13 (W.D. Tex. Nov. 15, 2006) (finding that a pattern was alleged when hundreds of complaints against the police were filed without any disciplinary action being taken); *Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 WL 3503457 at *5–6 (W.D. Tex. Sept. 2, 2010) (holding that thirty-two prior incidents of deadly force spanning fifteen years were sufficient to allege a pattern); *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797–98 (S.D. Tex. 2012) (allegations of several specific incidents involving excessive use of force and 200 complaints of excessive use of force and 200 complaints of unlawful detention were sufficient to state a claim at the dismissal stage); *Flanagan*, 48 F. Supp. 3d at 952–54 (a "close call" in holding that plaintiffs had pleaded sufficient facts at the motion to dismiss stage in alleging that (1) the policy of the Dallas Police Department (DPD) is to shoot first and ask questions later; (2) a city councilman informed the media that there were training

issues within the DPD that resulted in the killing of an unarmed individual; (3) Dallas is at the top of the list of police misconduct statistics in the South; (4) Dallas is ranked eleventh in police misconduct incidents; (5) officers were involved in 144 shooting; (6) there were eighty-six grand jury investigations of police misconduct; (7) sixty unarmed African-American men were killed by Dallas police officers over the course of thirteen years; (8) DPD officers shot at least twelve other unarmed individuals during the same year the plaintiffs' son was shot; and (9) there were ninety-four open DPD internal affairs investigations into officer-involved shootings).

In an effort to establish a custom of the use of excessive force, Plaintiff cites to six prior incidents in which Dallas police officers allegedly used force against a suspect—either in the form of beating the suspect or using an object or weapon to wound or kill him. Compl. ¶ 13. Elsewhere in the Complaint, in support of her claim that the officers are not properly trained, Plaintiff presents an additional two examples of incidents in which an officer used excessive force against a suspect and was indicted for his actions. *Id.* ¶ 15. Although Plaintiff presents only the first six incidents in support of her claim that a custom of excessive use of force exists, the Court nonetheless construes Plaintiff's Complaint liberally and considers all eight of the incidents mentioned. Of these incidents, which occurred between 2008 and 2013, three resulted in the death of the individual, and only one involved the use of force against an individual with a mental illness. *Id.* ¶¶ 13, 15.

The City argues that the lack of similarity between these eight incidents and the incident involving Mr. Moreno is grounds for dismissing the claim. Def.'s Mot. 9. While a pattern of *similar* violations is required, the Fifth Circuit has held that the specificity required "should not be exaggerated." *Estate of Davis*, 406 F.3d at 383. "Our cases require that the prior acts be fairly similar to what ultimately transpired, and in the case of excessive use of force, that the prior act have

involved injury to a third party." *Id.* Here, Plaintiff has alleged eight prior incidents involving the use of force by Dallas police officers resulting in injury or death to a third party. Plaintiff's claim should therefore not be dismissed for failing to allege prior incidents of excessive force that are highly similar to the events involving Mr. Moreno.

The City also argues that Plaintiff's allegations fail to support an inference of a persistent and widespread practice of the use of excessive force. Def.'s Mot. 9. The Court agrees. Although Plaintiff has pointed to eight instances, over the course of five years, in which an officer wounded or killed an individual, these allegations do not support an inference of a pattern of abuses that can be distinguished from mere isolated incidents. *Piotrwoski*, 237 F.3d at 582. In view of the size of the Dallas Police Department, and bearing in mind courts' prior holdings in similar cases, facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses, especially without any further context from Plaintiff. *Cf. Flanagan*, 48 F. Supp. 3d at 952–54 (a "close call" in holding that plaintiffs pled sufficient facts at the motion to dismiss stage when plaintiffs offered numerous allegations, including that twelve unarmed individuals were shot in the year the plaintiff's son was killed; a councilman had expressed concern over the killing of unarmed individuals; statistics on Dallas' use of force compared to other cities indicated a problem with the use of excessive force; there were eighty-six grand jury investigations of police misconduct; sixty unarmed African-American men had been killed over the course of thirteen years; and ninety-four DPD internal affairs investigations remained pending).

      *ii.*    *Policy of Investigating Instances of Excessive Force*

The Court next considers Plaintiff's allegation that the policies of the Dallas Police Department regarding the investigation of instances of excessive force insulate police officers and

perpetuate a culture where the excessive use of force is condoned. Compl. ¶ 16. Specifically, Plaintiff

alleges that:

> Under the current policy, the Dallas police officers have 72 hours before they are
> required to make an official sworn statement about what happened. During this time
> they have unbridled access to investigative evidence related to the officer-involved
> killing. This allows them to interrogate witnesses and cover up any excessive use of
> force. Indeed, it is not uncommon for witnesses to be treated like criminals, such as
> being detained for hours and brought to an interrogation room for questioning by the
> team investigating the killing.

*Id.* ¶ 17.

A facially innocuous policy will support municipal liability under Section 1983 "if it was

promulgated with deliberate indifference to the known or obvious consequences that constitutional

violations would result." *Piotrowski*, 237 F.3d at 579 (internal quotations omitted).

Plaintiff's claim with regards to a policy of investigation that insulates officers and encourages

the use of excessive force is deficient for two reasons. First, the allegations provided by Plaintiff are

mere speculation and conclusory remarks. Plaintiff has failed to plead sufficient facts to support her

claim that the City had a policy that caused Officer Sanchez to violate Mr. Moreno's constitutional

rights. Furthermore, Plaintiff has failed to factually support the allegation that the final policymaker

adopted or promulgated these facially innocuous policies with deliberate indifference to the known

or obvious consequences. "Deliberate indifference is a stringent standard of fault and requires proof

that a municipal actor disregarded a known or obvious consequence of his action." *Mosser*, 2005 WL

1421440, at *5 (citing *Estate of Davis*, 406 F.3d at 380). In addition, "deliberate indifference

generally requires that a plaintiff demonstrate 'at least a pattern of similar violations.'" *Burge v. St.

Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d

447, 459 (5th Cir. 2001)). In her Complaint, Plaintiff avers that "[t]he implementation of the above

practices, failures to implement and enforce written policies, and the lack of adequate training by the City constitutes deliberate indifference to Mr. Moreno and Plaintiff." Compl. ¶ 25. These conclusory statements, however, combined with Plaintiff's inability to establish a pattern of similar violations of excessive use of force, are insufficient to support the inference that a policy of excessive use of force was promoted.

>    iii.    *Failure to Train*

The City further argues that Plaintiff fails to support her claim that "there is a lack of proper training or education on excessive use of force." Def.'s Mot. 15; Compl. ¶ 15. In order to prevail on a failure to train theory, a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy was a moving force in causing the violation of the plaintiff's rights. *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014); *Valle*, 613 F.3d at 544.

Plaintiff alleges that "the City took no steps to adequately train officers on the appropriate use of force." Compl. ¶ 24. She further asserts that "[i]n response to the numerous shootings [that] occurr[ed] in 2012, the Dallas Chief of Police instituted new policies and directives, but none of them addressed training officers on use of force." *Id.* ¶ 13. Plaintiff then points to two 2013 incidents in which officers shot a suspect and were subsequently indicted for their actions in 2014. *Id.* ¶ 15. Plaintiff uses these examples to demonstrate that, despite a "lengthy and clear pattern of excessive force, it was not until this year [2014] that the Dallas Chief of Police began to discuss in any amount of detail his *plan* to increase the use of deadly force training." *Id.* ¶ 16. Plaintiff adds that "[t]here is no indication this plan has been implemented or that it has had any effect." *Id.*

While the City notes the insufficiency of these allegations, Plaintiff maintains that the events

surrounding Mr. Moreno's death reveal the inadequacy of current training. Def.'s Mot. 15; Pl.'s Resp. 15. According to Plaintiff, the fact that four officers collectively engaged in beating and kicking the unarmed Mr. Moreno to death "demonstrate an abject failure by the Chief of Police to train his officers on the reasonable use of force." Pl.'s Resp. 15.

A review of Plaintiff's allegations, taken as true for the purpose of deciding the present motion to dismiss, do not permit a reasonable inference that the municipality engaged in deliberate indifference with respect to an inadequate training policy. *See Kitchen*, 759 F.3d at 484. Although Plaintiff refers multiple times to the lack of adequate training, she fails to provide relevant factual support for these allegations. Instead, she relies on the Chief of Police's alleged *intention* to increase training to show that prior training was inadequate. Even if such an argument did not present a gap in logic, it would nevertheless remain deficient, as it would fail to indicate the municipality's deliberate indifference as to the alleged lack of training. Moreover, Plaintiff's own Complaint relies on instances in which officers were indicted for their behavior, thus undermining the argument that the City does not discipline officers for their misconduct or object to the use of excessive force. *See* Compl. ¶ 15. As a result, Plaintiff does not offer sufficient factual allegations to support her claim that deliberate indifference to a policy of inadequate officer training was a moving force in causing the violation of Mr. Moreno's rights. *See Speck v. Wiginton*, No. 14-10955, 2015 WL 1195829, at *2 (5th Cir. Mar. 17, 2015) (holding that dismissal of a failure to train claim is proper when Plaintiff alleges no facts about what training the city provided or failed to provide); *Pivonka v. Collins*, No. Civ.A.3:02CV0742-G, 2002 WL 1477455, at *4 (N.D. Tex. July 5, 2002) (finding the allegation that four police officers were involved in unconstitutional acts against plaintiff, without more, to be insufficient to indicate a failure to train or supervise). Therefore, Plaintiff's Complaint does not

- 19 -

present sufficient factual allegations to support the inference that deliberate indifference to an inadequate training policy was the moving force in causing the violation of Mr. Moreno's rights.

In sum, Plaintiff has alleged facts that are insufficient to indicate the existence of a policy that encouraged the use of excessive force. Because Plaintiff has failed to present allegations that identify a policymaker or a custom or policy of excessive use of force, her pleadings do not support municipal liability on her Section 1983 claim. The City's Motion to Dismiss this claim is therefore **GRANTED**.[2]

B.      *Fourteenth Amendment Claim*

Lastly, the City moves to dismiss Plaintiff's claim that Defendants' use of excessive force violated her and Mr. Moreno's Fourteenth Amendment rights, as the City objects to Plaintiff's contention that the Fourteenth Amendment's substantive due process inquiry can be applied to the present case. Def.'s Mot. 16; Compl. ¶ 27.

The Supreme Court has explicitly stated that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). A seizure, in turn, occurs "[w]henever a police officer accosts an individual and restrains his freedom to walk away." *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

---

[2] Because the Court concludes that Plaintiff has failed to plead sufficient facts identifying a policymaker and demonstrating the existence of a custom or policy, the Court need not discuss the final element necessary to establish municipal liability—showing that the policy or custom was the moving force behind the constitutional violation.

In her Response, Plaintiff argues that the Fourteenth Amendment applies when there is no probable cause for the encounter, stating that "the use of nearly any amount of force may result in a constitutional violation when [an individual] 'poses no threat to the officers' safety or that of others, and [the individual] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified.'" *Id.* ¶ 58 (quoting *Ikerd v. Blair*, 101 F. 3d 430, 434 (5th Cir. 1996)). Plaintiff relies on *Ikerd v. Blair*, but fails to present the Fifth Circuit's full holding in that case, namely, that "*in the context of a custodial interrogation*, the use of any amount of force may result in a constitutional violation." 101 F. 3d at 434 (emphasis added). In addition, the facts of *Ikerd* and the present case are not analogous. In *Ikerd*, a 300-pound officer violently jerked a ten-year-old girl out of a chair and dragged her to another room while questioning the girl's father inside their home. 101 F. 3d at 432–33. In the present case, however, Plaintiff alleges that Officer Sanchez, after hearing that he had been "acting paranoid," demanded that Mr. Moreno exit his vehicle and prepared to place him in handcuffs; after Mr. Moreno fled the scene, Officer Sanchez chased and tackled him. Compl. ¶ 8. Thus, Plaintiff's reliance on *Ikerd* does not advance her argument that her claims can be decided under the Fourteenth Amendment's substantive due process inquiry.

Because Plaintiff alleges that Mr. Moreno was killed as a result of excessive force used in the course of being seized, the Fourth Amendment governs this matter. *See Flanagan*, 48 F. Supp. 3d at 948 (holding that the Fourth Amendment applies when individual was killed by use of deadly force in the course of being seized). Therefore, to the extent Plaintiff asserts a claim based on the excessive use of force under the Fourteenth Amendment, such claim is precluded and the City's Motion to Dismiss this claim is **GRANTED**.

## IV.

## CONCLUSION

For the reasons discussed above, Defendant City of Dallas' Motion to Dismiss (doc. 79) is **GRANTED** in its entirety. Plaintiff Rita Moreno's Section 1983 claim against the City of Dallas for violations under the Fourth Amendment is hereby **DISMISSED WITHOUT PREJUDICE**.

Ordinarily, courts afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d. 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted") (internal alterations omitted). Recognizing that this Order is the Court's first review of Plaintiff Rita Moreno's allegations and that the defects of her Section 1983 claim against the City of Dallas for violations of the Fourth Amendment are not incurable, Plaintiff is permitted to replead within (30) days of the date of this Order. Failure to file an amended pleading will result in a dismissal *with prejudice* of the Plaintiff's Section 1983 claim against the City of Dallas.

However, Plaintiff is not given an opportunity to replead her claim for violation of the Fourteenth Amendment, and this claim is hereby **DISMISSED WITH PREJUDICE**.

SO ORDERED.

SIGNED: June 18, 2015.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE