UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROLAND MORENO, Individually | § | |
| and RHONDA WHITE, Individually, | § | |
| and as mother and next friend of | § | |
| MORGAN MORENO, a minor and as | § | |
| Representatives of the Estate of | § | CIVIL ACTION NO. |
| MARSHALL MORENO, Deceased. | § | |
| Plaintiffs, | § | 3:13-CV-4106-B |
| | § | |
| v. | § | |
| | § | |
| OFFICER ALBERT SANCHEZ, et al., | § | |
| Defendants. | § | |

# DEFENDANTS ALBERT SANCHEZ, JEFFREY DEBEVEC, AND RYAN HALES'S BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT BASED UPON QUALIFIED IMMUNITY

OFFICE OF THE DALLAS CITY ATTORNEY

Christopher D. Bowers
Interim City Attorney

Jason G. Schuette
Assistant City Attorney
Texas Bar No. 17827020
jason.schuette@dallascityhall.com
Tatia R. Wilson
Assistant City Attorney
Texas Bar No. 00795793
tatia.wilson@dallascityhall.com
Stefani R. Williams
Assistant City Attorney
Texas Bar No. 24045316
stefani.williams@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:      214-670-3519
Telecopier:     214-670-0622

ATTORNEYS FOR THE DEFENDANTS

## TABLE OF CONTENTS

I.    ARGUMENT AND AUTHORITIES ..................................................................1

    A.    Applicable Legal Standards ..................................................................1

        1.    Motion for Summary Judgment ..................................................1

        2.    Qualified Immunity....................................................................3

    B.    Analysis of Plaintiffs' Unlawful Detention and Unlawful Arrest
       Claims ..................................................................................................5

        1.    Officer Sanchez lawfully detained Marshal Moreno. .................6

        2.    Officer Sanchez is entitled to qualified immunity as to any
           unlawful detention. ..................................................................10

        3.    Officer Sanchez lawfully arrested Marshal Moreno.................11

        4.    Officer Sanchez is entitled to qualified immunity as to any
           unlawful arrest. ........................................................................14

    C.    The Officers Are Entitled to Summary Judgment as to the Plaintiffs'
       Excessive Force Claims Because the Officers Did Not Violate the
       Fourth Amendment. ............................................................................15

        1.    Officer Sanchez....................................................................15

        2.    Officer Debevec ..................................................................21

        3.    Officer Hales ........................................................................23

    D.    Alternatively, the Officers Are Entitled to Summary Judgment as to
       the Plaintiffs' Excessive Force Claims Because the Officers Are
       Entitled to Qualified Immunity..........................................................26

    E.    The Officers Are Entitled to Summary Judgment as to the Plaintiffs'
       Fourteenth Amendment "Excessive Force" Claims Because Those
       Claims Arise Exclusively Under the Fourth Amendment. ..................28

II.   CONCLUSION ..........................................................................................29

CERTIFICATE OF SERVICE ...............................................................................31

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B       ii

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adams v. Williams*,
  407 U.S. 143 (1972) ............................................................................................... 8, 9

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ............................................................................................... 5, 27

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 2, 3

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ............................................................................................... 27

*Babb v. Dorman*,
  33 F.3d 472 (5th Cir. 1994) .................................................................................. 5

*Balli v. Texas*,
  530 S.W.2d 123 (Tex. Crim. App. 1975) ............................................................. 9

*Barber v. Santa Maria Police Dep't*,
  No. 2:08–062732010 DMG MLG, 2010 WL 5559708 (C.D. Cal. Sept.1,
  2010) ...................................................................................................................... 18

*Bazan ex rel. Bazan v. Hidalgo Cnty.*,
  246 F.3d 481 (5th Cir. 2001) ................................................................................ 4

*Brinegar v. United States*,
  338 U.S. 160 (1949) ............................................................................................... 11

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ............................................................................................... 27

*Brown v. Callahan*,
  623 F.3d 249 (5th Cir. 2010) ................................................................................ 3

*Brown v. Lyford*,
  243 F.3d 185 (5th Cir. 2001) ................................................................................ 14

*Brown v. Texas*,
  443 U.S. 47 (1979) ................................................................................................. 6

*Brumfield v. Hollins*,
  551 F.3d 322 (5th Cir. 2008) ................................................................................ 4

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                          iii

*Bryan v. MacPherson*,
   630 F.3d 805 (9th Cir. 2010) ................................................................. 21

*Buchanan v. Gulfport Police Dep't*,
   530 F. App'x 307 (5th Cir. 2013) ......................................................... 16

*Calhoun v. Wyatt*,
   No. 6:11cv4, 2013 WL 1882367 (E.D. Tex. May 2, 2013) ................... 17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 2, 3

*Cortez v. United States*,
   449 U.S. 411 (1981) ................................................................................ 6

*Davalos v. Johns*,
   No. 3:11cv222-P, 2013 WL 1820313 (N.D. Tex. Apr. 30, 2012) ......... 14

*Duckett v. City of Cedar Park*,
   950 F.2d 272 (5th Cir. 1992) ................................................................... 2

*Duran v. Sirgedas*,
   240 F. App'x 104 (7th Cir. 2007) ......................................................... 19

*Eason v. Thaler*,
   73 F3d 1322 (5th Cir. 1996) .................................................................... 3

*Evans v. Ball*,
   168 F.3d 856 (5th Cir. 1999) ................................................................... 4

*Fletcher v. Schwend*,
   No. 305cv2138-B, 2006 WL 1867890 (N.D. Tex. July 6, 2006) ......... 11

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ............................................................... 2, 3

*Foster v. City of Lake Jackson*,
   28 F.3d 425 (5th Cir. 1994). .................................................................... 5

*Francis v. Turrack*,
   No. SA-12-CA-927-PM, 2014 WL 3687311 (W.D. Tex. June 17, 2014) ............................ 17

*Gassner v. City of Garland*,
   864 F.2d 394 (5th Cir. 1989) ................................................................... 3

*Gibson v. Rich*,
   44 F.3d 274 (5th Cir. 1995) ..................................................................... 5

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    iv

*Glenn v. City of Tyler*,
  242 F.3d 307 (5th Cir. 2001) ................................................................. 15

*Gonazles v. Novosel*,
  No. 3:07–04720 CRB, 2008 WL 4614665 (N.D. Cal. Oct.16, 2008)..................................... 18

*Goodson v. City of Corpus Christi*,
  202 F.3d 730 (5th Cir. 2000) ................................................................. 15

*Graham v. Connor*,
  490 U.S. 386 (1989)................................................................. 26, 27, 29

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)................................................................. 3

*Harris v. Texas*,
  913 S.W.2d 706 (Tex. App.—Texarkana 1995, no pet.)................................. 10, 11

*Huertas v. Ivanko*,
  No. 3:11cv00528 VLB, 2013 WL 1193187 (D. Conn. Mar. 25, 2013)................................. 19

*Hunter v. Bryant*,
  502 U.S. 224 (1991)................................................................. 12, 27

*James v. Dallas Hous. Auth.*,
  526 F. App'x 388 (5th Cir. 2013) ........................................................... 27

*Kerr v. Lyford*,
  171 F.3d 330 (5th Cir. 1999) ............................................................... 4

*King v. City of Richland*,
  No. CV-13-5130-JPH, 2015 WL 2151821 (E.D. Wash. May 7, 2015)................. 20, 21, 23

*Lynch Prop. v. Potomac Ins. Co.*,
  140 F.3d 622 (5th Cir. 1998) ............................................................... 3

*Lytle v. Bexar County*,
  560 F.3d 404 (5th Cir. 2009) ............................................................... 27

*Malley v. Briggs*,
  475 U.S. 335 (1986)................................................................. 5

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
  475 U.S. 574 (1986)................................................................. 3

*Meek v. Tex. Dep't of Pub. Safety*,
  175 S.W.3d 925 (Tex. App.—Dallas 2005, no pet.)......................................... 13

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    v

*Michigan v. DeFillippo*,
    443 U.S. 31 (1979) ............................................................................................ 12

*Miller v. Texas*,
    No. 05-11-00282-CR, 2012 WL 2877633 (Tex. App.—Dallas July 16, 2012,
    no pet.) ..................................................................................................... 10, 13

*Miranda v. Texas*,
    No. 04-09-00779-CR, 2010 WL 4008439 (Tex. App.—San Antonio Oct. 13,
    2010, no pet.) .............................................................................................. 9

*Morgan v. Swanson*,
    659 F.3d 359 (5th Cir. 2011) ......................................................................... 27

*Ontiveros v. City of Rosenberg*,
    564 F.3d 379 (5th Cir. 2009) ......................................................................... 27

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...................................................................................... 4, 5

*Pierce v. Smith*,
    117 F.3d 866 (5th Cir. 1997) ......................................................................... 4, 5

*Prymer v. Ogden*,
    29 F.3d 1208 (7th Cir. 1994) ......................................................................... 19

*Ragas v. Tennessee Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir. 1998). ....................................................................... 2, 3

*Saucier v. Katz*,
    533 U.S. 194 (2001) ...................................................................................... 4, 26

*Searcy v. Wester*,
    No. 3:12cv3891-M-BF, 2015 WL 694927 (N.D. Tex. Feb. 17, 2015) ................. 14

*Siegert v. Gilley*,
    500 U.S. 226 (1991) ...................................................................................... 4

*Sloan v. Dulak*,
    868 F. Supp. 2d 535 (W.D. Va. 2012) .............................................. 18, 19, 20, 22, 23

*Terry v. Ohio*,
    392 U.S. 1 (1968) .......................................................................................... 9

*Tex. Dep't of Pub. Safety v. Briggs*,
    No. 03-05-00331-CV, 2006 WL 305306 (Tex. App.—Austin Feb. 9, 2006, no
    pet.) ............................................................................................................ 9

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                     vi

*Topalian v. Ehrman*,
 954 F.2d 1125 (5th Cir. 1992) ................................................................. 2

*Truex v. Texas*,
 No. 05-10-00665-CR, 2011 WL 17638 (Tex. App.—Dallas Jan. 5, 2011, no
 pet.) ........................................................................................................ 8

*United States v. Arvizu*,
 534 U.S. 266 (2002) ............................................................................... 6

*United States v. Garcia*,
 179 F.3d 265 (5th Cir. 1999) ................................................................. 12

*United States v. Mendenhall*,
 446 U.S. 544 (1980) ............................................................................... 8

*United States v. Michelletti*,
 13 F.3d 838 (5th Cir. 1994) (*en banc*) ................................................... 6

*United States v. Neufeld-Neufeld*,
 338 F.3d 374 (5th Cir. 2003) ................................................................. 6

*United States v. Sokolow*,
 490 U.S. 1 (1989) ................................................................................... 9

*United States v. Watson*,
 273 F.3d 599 (5th Cir. 2001) ................................................................. 12

*Vineyard v. Wilson*,
 311 F.3d 1340 (11th Cir. 2002) ............................................................. 17

*Wagner v. Bay City, Tex.*,
 227 F.3d 316 (5th Cir. 2000) ................................................................. 17

*Wells v. Brigman*,
 No. 3:07cv00025 SWW, 2009 WL 826221 (E.D. Ark. Mar. 26, 2009) ............... 18

*Wilson v. Flynn*,
 429 F.3d 465 (4th Cir. 2005) ........................................................... 19, 22

*Winters v. Adams*,
 254 F.3d 758 (8th Cir. 2001) ................................................................. 18

*Wyatt v. Fletcher*,
 718 F.3d 496 (5th Cir. 2013) ................................................................. 27

*York v. Texas*,
 342 S.W.3d 528 (Tex. Crim. App. 2011) ................................................. 9

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    vii

Statutes

Tex. Pen. Code § 1.07(a)(40) ........................................................................... 8

Tex. Pen. Code § 49.01(2)(A) ........................................................................... 8

Tex. Pen. Code § 49.02 ..................................................................................... 8

Rules

Fed. R. Civ. P. 56(c) ......................................................................................... 2

Fed. R. Civ. P. 56(e) ......................................................................................... 2

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                viii

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROLAND MORENO, Individually | § | |
| and RHONDA WHITE, Individually, | § | |
| and as mother and next friend of | § | |
| MORGAN MORENO, a minor and as | § | |
| Representatives of the Estate of | § | CIVIL ACTION NO. |
| MARSHALL MORENO, Deceased. | § | |
| Plaintiffs, | § | 3:13-CV-4106-B |
| | § | |
| v. | § | |
| | § | |
| OFFICER ALBERT SANCHEZ, et al., | § | |
| Defendants. | § | |

**DEFENDANTS ALBERT SANCHEZ, JEFFREY DEBEVEC, AND RYAN HALES'S
BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
BASED UPON QUALIFIED IMMUNITY**

TO THE HONORABLE COURT:

Defendants Albert Sanchez ("Sanchez"), Jeffrey Debevec ("Debevec"), and Ryan Hales ("Hales") (collectively, "the Officers"),[1] pursuant to the Court's Scheduling Order (*See* ECF #93), file their brief in support of their joint motion for partial summary judgment based upon qualified immunity. The Officers incorporate by reference Defendants' Appendix in Support of Their Motion for Partial Summary Judgment on Qualified Immunity, filed concurrently.

## I.    ARGUMENT AND AUTHORITIES

### A.    Applicable Legal Standards

#### 1.    Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[1] Officer Francisco Nevarez was named as a defendant in the First Amended Complaint filed by Rita Moreno, but he is not a named defendant by the Plaintiffs. Rita Moreno's claims have been dismissed. (*See* ECF # 115 and #116.)

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 1

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The moving party, however, need not support his motion with affidavits or other evidence negating the elements of the nonmovant's claim. *Id.* Once the moving party has satisfied this initial burden, the burden then shifts to the nonmoving party to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). To withstand a motion for summary judgment, the nonmovant must present evidence sufficient to establish the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-23; *Liberty Lobby*, 477 U.S. at 256-57; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In other words, the nonmovant must set forth specific facts supported by competent summary judgment evidence that would establish each of the challenged elements of its case for which it will bear the burden of proof at trial. *Topalian*, 954 F.2d at 1131. The nonmovant cannot rest upon mere conclusory allegations or denials of the adverse party's pleadings, but must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

While the court must construe all evidence and justifiable inferences drawn from the

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 2

record in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458, it need not consider conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation when ruling on a summary judgment motion. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth*, 19 F.3d at 1533. The court moreover should not assume in the absence of sufficient proof that the nonmovant could or would prove the necessary facts. *Lynch Prop. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" should not be considered by the court. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## 2. Qualified Immunity

The Officers have affirmatively pleaded the defense of qualified immunity. Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Police officers are specifically entitled to assert this qualified immunity defense. *Gassner v. City of Garland*, 864 F.2d 394 (5th Cir. 1989).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). While the defendant must initially plead the defense, "[o]nce the defendant has done so the burden shifts to the plaintiff to rebut this

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B        Page 3

defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997). Thus, because the Officers raised the defense of qualified immunity in their motion, the burden lies with the Plaintiffs, even on summary judgment. *See Brumfield*, 551 F.3d at 326.

In assessing whether a public official is entitled to qualified immunity, the Fifth Circuit conducts the two-prong analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 234-36 (2009).[2] The first prong of the *Saucier* analysis requires the court to decide whether, taken in the light most favorable to the plaintiff, the facts show that the officer's conduct violated a constitutional right. *See also Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir. 1999) (holding that the threshold inquiry is whether a constitutional claim has been alleged). The second prong requires the court to make two separate inquiries: whether the right allegedly violated was clearly established at the time of the event giving rise to the plaintiff's claim, and if so, whether the conduct of the defendant was objectively unreasonable. *Evans v. Ball,* 168 F.3d 856, 860 (5th Cir. 1999).

In *Pearson*, the Supreme Court held that district courts need not first resolve whether the constitutional right in issue was clearly established prior to resolving whether the government official's actions were objectively reasonable. *Pearson*, 555 U.S. at 236. Rather, this Court may

---

[2] The Supreme Court recently clarified in *Pearson* that the ordered two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving qualified immunity claims. *Pearson*, 555 U.S. at 236. Therefore, this Court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in this particular case. *Id.* Accordingly, the Court may go directly to whether the Officers' objectively reasonable actions constituted a deprivation of Marshall's constitutional rights without first addressing whether the rights were clearly established.

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                Page 4

exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in this particular case.  *Id.*

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.  *Creighton*, 483 U.S. at 640; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (holding that to overcome qualified immunity, pre-existing law must truly compel the conclusion that what the defendant is doing violates federal law in the circumstances).

In *Anderson v. Creighton*, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him.  *Creighton*, 483 U.S. at 641.  If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).  Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. at 341.

## B.   Analysis of Plaintiffs' Unlawful Detention and Unlawful Arrest Claims

Plaintiffs' claim that Marshall was unlawfully seized.  (*See* Plaintiffs' Second Amended Complaint at 3 ¶ 6 (ECF #58 at PageID 619).)  Plaintiffs do not make clear whether they com-

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 5

plain of the initial detention, the physical seizure, or both. Therefore, the Officers will address both the initial investigative detention and the subsequent physical seizure.

### 1. Officer Sanchez lawfully detained Marshal Moreno.

The Fourth Amendment protects against "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted). Here, the standard to be applied in resolving Plaintiffs' unlawful detention claim is that of reasonable suspicion. A peace officer may lawfully detain a person for the purpose of temporarily investigating possible criminal activity, provided he has a reasonable, articulable suspicion based on objective facts that criminal activity may be underway or has occurred. *Brown v. Texas*, 443 U.S. 47, 51 (1979); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*) ("Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion."). "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions–but more than a hunch–measured in light of the totality of the circumstances." *Michelletti*, 13 F.3d at 840; *Cortez v. United States*, 449 U.S. 411, 417 (1981) (holding that "the totality of the circumstances–the whole picture–must be taken into account."). "Indeed, the totality of the circumstances should reflect the outcome of a process in which 'officers [] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Neufeld-Neufeld*, 338 F.3d 374, 379 (5th Cir. 2003).

The following facts are undisputed. At the time of Marshall's detention, Officer Sanchez was working an approved off-duty security job at the Circle K Convenience Store #6113, located

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 6

near the intersection of the 5600 block of East R.L. Thornton Freeway ("I-30") and Winslow Avenue, in Dallas.  (App'x at 1, 3, 5.)  Officer Sanchez was in his full Dallas Police Department ("DPD") uniform, and he was clearly identifiable as a law enforcement officer.  (*Id*. at 1.)

Meanwhile, Rita Moreno ("Rita") and her sister, Yolanda Hurtado ("Yolanda"), drove into the Circle K's parking lot and stopped at one of the gas pumps.  (Appx. at 15 at time index 7:26:10.)  Also inside the van was Rita's son, Marshall Moreno ("Marshall").  (*Id*.)  Yolanda and Rita were taking Marshall to the Timberlawn mental health hospital because Marshall was high on methamphetamine and was having another mental health breakdown.  (Rita Moreno's oral deposition ("Moreno Depos.") at 52, 55, 59 (Appx. at 71, 76, 80).)  They stopped at the Circle K to buy gasoline, and also because Marshall was becoming increasingly paranoid and irrational, and they feared that Marshall might jump out of the van and then run into the street and injure himself.  (Appx. at 15 at time indices 7:28:10, 7:45:30; Moreno Depos. at 57-58, 61-62, 69 (Appx. at 78-79, 82-83, 88.)

While Yolanda was filling the van with gasoline, Rita entered the Circle K to see if the sales clerk would contact the police for her.  (Appx. at 15 time index 7:29:10: "I told my sister, 'you know what, I'm think I'm going to have to call the police.'")  Rita went into the Circle K, where she spoke with the clerk and asked if she could call 9-1-1.  (Appx. at 1, 15 at time index 7:29:30.)  The clerk told Rita that there was a police officer present, referring to Officer Sanchez.  (Appx. at 1, 15 at time index 7:29:40.)  Sanchez overheard Rita's conversation with the clerk.  (Appx. at 1.)  Officer Sanchez spoke directly with Rita, who told Officer Sanchez that her son was in the van, that he was high on drugs, and that she wanted Officer Sanchez to talk to him.  (Appx. at 1, 15 at time index 7:29:50.)  Officer Sanchez then walked to Rita's van to engage Marshall and further investigation the situation.  (Appx. at 1.)

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 7

It must be remembered that Officer Sanchez's initial action of walking out to the van and speaking with Marshall could not violate the Fourth Amendment as a matter of law.  There are three general categories of police-citizen interaction.  The first category is that of an encounter.  A police officer does not violate the Fourth Amendment by merely approaching an individual in public to ask questions.  Such an encounter does not require any justification whatsoever on the part of an officer.  *United States v. Mendenhall*, 446 U.S. 544 (1980).

The second category is that of a temporary or investigative detention.  This is a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information.  *Adams v. Williams*, 407 U.S. 143, 146 (1972).  As discussed above, such a detention requires that an officer have a reasonable suspicion that the person detained is involved in criminal activity.  Here, Officer Sanchez possessed sufficient information to form a reasonable suspicion that Moreno had committed the Texas penal offense of Public Intoxication.

In Texas, "[a] person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."  Tex. Pen. Code § 49.02.  "Intoxication" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body."  Tex. Pen. Code § 49.01(2)(A).  A "public place" is defined to mean "any place to which the public or a substantial group of the public has access."  Tex. Pen. Code § 1.07(a)(40); *see also Truex v. Texas*, No. 05-10-00665-CR, 2011 WL 17638, at *3 (Tex. App.—Dallas Jan. 5, 2011, no pet.) (mem. op., not designated for publication) ("A business parking lot has been repeatedly held to be a public place."); *Tex. Dep't of Pub. Safety v. Briggs*, No. 03-05-00331-CV, 2006 WL

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 8

305306, at *4 (Tex. App.—Austin Feb. 9, 2006, no pet.) (mem. op., not designated for publication) ("Courts have consistently held that parking lots are public places."); *York v. Texas*, 342 S.W.3d 528, 536-37 (Tex. Crim. App. 2011) (holding that the "parking and sidewalk area" outside a gas station was a "public place"). If the person is found in or near a public roadway where it is reasonable to assume vehicles will travel, regardless of whether or not vehicles are actually present at the time, Texas courts have found sufficient evidence to support reasonable suspicion that the person is potentially in danger. *Miranda v. Texas*, No. 04-09-00779-CR, 2010 WL 4008439, at *2 (Tex. App.—San Antonio Oct. 13, 2010, no pet.) (citing *Balli v. Texas*, 530 S.W.2d 123, 125 (Tex. Crim. App. 1975)).

Officer Sanchez indisputably had a reasonable suspicion that Marshall had committed the penal offense of Public Intoxication. Reasonable suspicion must be measured by the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). An officer is entitled to draw reasonable inferences from the facts in light of his experience. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Additionally, information given to the police by a witness or an informant can justify a stop if it bears the indicia of reliability. *Adams*, 407 U.S. at 146-47. Such indicia are generally found "[w]hen the victim of a street crime seeks immediate police aid and gives a description of his assailant." *Adams,* 407 U.S. at 147.

Here, Officer Sanchez possessed particularized, articulable facts which, taken together with Sanchez's rational inferences from those facts, reasonably warranted the minimal intrusion of engaging Marshall in the Circle K parking lot. Those highly reliable facts came directly from a percipient witness, Rita, who was seeking police assistance for an ongoing situation. In fact, Officer Sanchez was doing precisely what Rita requested–that he go out and talk with her son. Considering the undisputed facts, Officer Sanchez obviously was empowered to engage and to

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 9

detain Marshall briefly to investigate the situation, which is precisely what Officer Sanchez testifies was his intention when he approached the van.  (*See* Appx. at 1: "Based on the Latin female's [Rita's] report, I understood that her son may have committed a criminal offense and wanted to investigate further.")

If Officer Sanchez didn't have a reasonable suspicion that Marshall had committed the offense of Public Intoxication after speaking with Rita, he certainly had it once he encountered Marshall.  Officer Sanchez testifies that once he approached the van, the passenger-side sliding door flew open, and Officer Sanchez saw Marshall.  (Appx. at 1.)  Officer Sanchez is certified in standardized field sobriety testing (SFST), and he observed that Marshall had resting nystagmus, which is a key indicator of narcotic intoxication.  (*Id.*)  Further, a reasonable suspicion of Public Intoxication can arise in the course of a consensual police encounter.  *See Miller v. Texas*, No. 05-11-00282-CR, 2012 WL 2877633, at *6 (Tex. App.—Dallas July 16, 2012, no pet.)  For these reasons, and based upon the undisputed facts, Officer Sanchez is entitled to summary judgment as to any claim that Marshall was subjected to an unlawful investigative detention.

### 2. Officer Sanchez is entitled to qualified immunity as to any unlawful detention.

The Officers have shown that, as a matter of law, Officer Sanchez had a reasonable suspicion that Marshall had committed the offense of Public Intoxication.  Therefore, the Court should find that Officer Sanchez did not violate Marshall's Fourth Amendment rights.  However, even if the Court finds that the totality of the circumstances did not support a reasonable suspicion, the Plaintiffs cannot meet their burden to show that no reasonable officer could have believed that a reasonable suspicion existed.  For example, somewhat analogous circumstances existed in *Harris v. Texas*, 913 S.W.2d 706 (Tex. App.—Texarkana 1995, no pet.)  Police officers encountered Harris, who was behaving oddly, dancing in the street and waving his arms.  The fact that one of

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 10

the officers saw an item in Harris's left hand that was consistent with drug paraphernalia, when combined with his odd behavior, is sufficient to raise a reasonable suspicion that he was intoxicated because of the use of either drugs or alcohol.  The Harris court held that acts of the officers in getting out of their car and speaking to Harris "constitute the very essence of a permissible investigative detention."  *Id.* at 713.

Here, Officer Sanchez personally observed Marshall's bizarre behavior, which included "mumbling words that made no sense," running around the Circle K parking lot, and yelling at Officer Sanchez, "You're out to get me!"  (Appx. at 1.)  And, although Officer Sanchez did not see drug paraphernalia in Marshall's hands, he did observe resting nystagmus, which coincided with Rita's report that Marshall was high on drugs.  (Appx. at 1.)  Under these circumstances, a reasonable police officer in Officer Sanchez's circumstances could have believed that reasonable suspicion was present.  More to the point, Plaintiffs can point to no case authorities that would place the lack of legal authority for Officer Sanchez's belief beyond dispute.  Therefore, Officer Sanchez is entitled to qualified immunity as a matter of law.

### 3.    Officer Sanchez lawfully arrested Marshal Moreno.

The third category of police-citizen interactions is an arrest.  An arrest must be justified by probable cause to believe that the suspect has committed or is committing an offense.  *See, e.g., Brinegar v. United States*, 338 U.S. 160, 175-76 (1949), *cited in Fletcher v. Schwend*, No. 305cv2138-B, 2006 WL 1867890, at *5 (N.D. Tex. July 6, 2006) (Boyle, J.) Whether Officer Sanchez had probable cause to arrest Marshall is a question of law.  *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).

Probable cause exists if at the time of the arrest, facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, were sufficient to

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 11

warrant a prudent person, or one of reasonable caution, to believe, in the circumstances shown, that one has committed, is committing, or is about to commit an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). When determining whether a reasonable person would have believed that an offense occurred, the Court considers the expertise and experience of law enforcement officials. *See United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (citation omitted). "Probable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false.'" *Piazza*, 217 F.3d at 246 (citation omitted). In determining whether probable cause exists, the Court is required only to find a basis for an officer to believe to a "fair probability" that an offense occurred. *Id.* (citations omitted). A "fair probability" does not mean that a reasonable person would have believed it more likely than not, which is a preponderance of the evidence standard, that an offense occurred. *Garcia*, 179 F.3d at 269. It simply means "something more than a bare suspicion, but need not reach the fifty percent mark." *Id.*; *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (holding that an arresting officer need only know with "fair probability" that the defendant committed the offense, which requires more than a "bare suspicion" but less than a preponderance of evidence) (citing *Garcia*, 179 F.3d at 269).

The same undisputed facts that supported Officer Sanchez's reasonable suspicion that Marshall might have committed the offense of Public Intoxication also provided Officer Sanchez with probable cause to believe that offense was being committed. However, more undisputed facts added to the probable cause calculation. After the van door flew open and Officer Sanchez observed resting nystagmus in Marshall's eyes, and Marshall screamed "You're out to get me!", Marshall ran eastbound out of the Circle K parking lot into the rush-hour traffic on Winslow Avenue. (Appx. at 1.) Marshall ran in large circles between cars and through parking lots. (*Id.*)

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B     Page 12

Marshall then ran southbound on Winslow Avenue toward the grassy embankment near I-30, and headed toward the busy westbound I-30 traffic lanes, while continuing to yell "You're out to get me!" (*Id.*)

Those additional undisputed facts clearly provided Officer Sanchez probable cause to believe that Marshall had committed the offense of Public Intoxication. Marshall was clearly intoxicated by some drug, as reported to Officer Sanchez by Rita and corroborated by objective evidence, namely, resting nystagmus and highly irrational behavior. Marshall's flight toward the busy I-30 traffic exacerbated the danger to Marshall and to the general public. As explained by the Dallas Court of Appeals in *Miller v. Texas*:

> The intoxicated individual need not commit any dangerous acts in the presence of an officer in order to pose a sufficient danger to himself or others. It is enough if the officer observes a degree of intoxication indicating the individual poses a *potential* danger to himself or others.

*Id.* at *4 (citing *Meek v. Tex. Dep't of Pub. Safety*, 175 S.W.3d 925, 927 (Tex. App.—Dallas 2005, no pet.).

Not surprisingly, the potential danger that Marshall posed to himself and to the general public was Officer Sanchez's immediate concern. (*See* Appx. at 1: "Fearing that the Latin male [Marshall] would run into the freeway, endangering himself and innocent motorists, I ran to the Latin male and used a balance displacement technique causing him to fall to the ground.")

For these reasons, and based upon the undisputed facts, Officer Sanchez is entitled to summary judgment as to Plaintiffs' claim Marshall was subjected to an unlawful arrest. There was abundant probable cause to believe that Marshall was in a public place and was intoxicated to the degree that he was a danger to himself or to others.

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 13

4.     **Officer Sanchez is entitled to qualified immunity as to any unlawful arrest.**

Even if the Court concludes that Sanchez lacked probable cause to arrest Marshall for Public Intoxication, Sanchez is nonetheless entitled to qualified immunity if there was at least arguable probable cause.  As the Fifth Circuit stated in *Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001):

> A plaintiff must clear a significant hurdle to defeat qualified immunity. "[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost."  That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply.

*Brown*, 243 F.3d at 190 (internal citation omitted).

Officers who are reasonable mistaken about a suspect's intoxication are nonetheless entitled to qualified immunity if the facts known to the officer justifiably suggest intoxication. *See Davalos v. Johns*, No. 3:11cv222-P, 2013 WL 1820313, at *8 (N.D. Tex. Apr. 30, 2012) ("Regardless of any denial of intoxication, if the facts in evidence indicate that Defendant was justified in believing that Plaintiff was intoxicated, then Defendant is entitled to qualified immunity on the claim of wrongful arrest. . . .  The same is true with respect to qualified immunity on the claimed unlawful detention that occurred prior to the arrest.") (cited in *Searcy v. Wester*, No. 3:12cv3891-M-BF, 2015 WL 694927, at *5 (N.D. Tex. Feb. 17, 2015).

Abundant undisputed evidence, set forth and discussed above, establishes that Officer Sanchez was justified in believing that Marshall was intoxicated and a danger to himself and to others.  Therefore, there was at least arguable probable cause to arrest Marshall, and Officer Sanchez is entitled to qualified immunity as a matter of law.

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 14

**C.     The Officers Are Entitled to Summary Judgment as to the Plaintiffs'
         Excessive Force Claims Because the Officers Did Not Violate the Fourth
         Amendment.**

Plaintiffs' assert that each of the Officers used unnecessary and objectively unreasonable force against Marshall, resulting in his death.  (*See* Plaintiffs' Second Amended Complaint at 3-5 ¶¶ 6-14 (ECF #58 at PageID 619-21).)

To prevail on a constitutional claim of excessive force, a plaintiff must establish that he suffered (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).  If the Plaintiffs are unable to establish *any* of these elements, then the Officers are entitled to summary judgment on the Plaintiffs' excessive force claims.

The Officers will address separately their respective uses of force.

**1.      Officer Sanchez**

Officer Sanchez chased Marshall as Marshall ran toward the westbound traffic lanes of I-30, disregarding Officer Sanchez's verbal commands to stop running.  (Appx. at 1.)  Officer Sanchez used a DPD-taught "balance placement technique" to force Marshall to the ground – he pushed Marshall causing him to fall.  (*Id.*)  The act of pushing a fleeing suspect to the ground does not constitute excessive force.  As explained by the Officers' expert witness, E. Joseph "Joey" Fox, a DPD use-of-force-trainer, the use of balance displacement was a reasonable action, particularly considering the need to prevent Marshall from running into I-30 traffic:

> From a tactical view, grounding a subject becomes a necessity.  Common sense would dictate that a grounded subject's tactical options are mini-mized and allows the officer the best opportunity to gain the advantage . . . when subjects are effectively, quickly and dynamically controlled with a grounding technique, the subject will experience a form of psychological shock immediately after they are grounded.

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 15

(E. Joseph "Joey" Fox's Rule 26(a)(2) Expert Report ("Fox Report") at 32-33 (Appx. at 54-55))

(citing PPCT Defensive Tactics Instructor Manual, Bruce K. Siddle, Revised June 2002 at page

3-22.  In this instance, Officer Sanchez's use of a push was about the lowest level of physical

control available to Officer Sanchez.  (*See id.* at 33 (Appx. at 55).)  In fact, Fox notes that the

Fifth Circuit has held that police officers may lawfully use "Taser" devices to control resistive

suspects.  (Fox Report at 33 (Appx. at 55) (citing *Buchanan v. Gulfport Police Dep't*, 530 F.

App'x 307, 314 (5th Cir. 2013)) (noting that "[s]everal other circuits have determined similarly

that, where a suspect resists arrest or fails to follow police orders, officers do not violate his right

against excessive force by deploying their tasers to subdue him," and citing cases).  Fox's expert

opinion is supported by the DPD's Linear Use of Force Continuum, contained within General

Order 900.00, that instructs that "Hard Empty Hand Controls" are an potential officer response to

"Defensive Resistance."  (*See* Appx. at 22.)  Officer Sanchez's push was not clearly excessive to

the need, and was objectively reasonable.

Unfortunately, the physical altercation did not end at the push to the ground.  Officer

Sanchez's affidavit, given on the same day as the incident, describes the intensity of his struggle

to gain control of Marshall:

> I commanded the Latin male [Marshall] to give me his hands as I
> struggled to gain control of his wrists and roll him onto his stomach in
> order to handcuff him.  I gave the Latin male multiple verbal commands to
> "STOP RESISTING!" and to "GIVE ME YOUR HANDS!"  The Latin
> male disregarded my multiple verbal commands and continued to struggle
> with me while he was yelling nonsense followed by "YOU'RE OUT TO
> GET ME!" A passerby (a very large Latin male, wearing a Dallas Cowboy
> jersey) ran to my assistance and asked if he could help, to which I yelled
> "YES!"  The passerby then placed himself on the back of the Latin male
> as I continue to attempt to get the Latin male's hands.  The Latin male
> continued to resist me by holding his left hand under his body, while
> reaching with [his] right hand and grasping onto items in my duty belt.
> The Latin male refused to comply with my multiple verbal commands, so
> I then removed my OC spray and attempted to deploy a burst, at which

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 16

point the Latin male grabbed my hand and the OC spray can.  Fearing that he may gain control of the can, with my right hand, I delivered several strikes to the Latin male's face.  He then released my hand and I was able to deploy a burst of OC spray to his face.  The Latin male continued to resist and then grabbed my police radio that was attached to my right hip, and removed it.

(Appx. at 1-2.)  These facts are not in dispute.

Officer Sanchez's use of OC spray[3] to try to gain Marshall's compliance was objectively reasonable, because police officers are permitted to use pepper spray when an individual is "resisting arrest or refusing police requests."  *Francis v. Turrack*, No. SA-12-CA-927-PM, 2014 WL 3687311, at *6 (W.D. Tex. June 17, 2014) (quoting *Vineyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002).  In fact, in *Vineyard* the court stated that, "'as a means of imposing force, pepper spray is generally of limited intrusiveness,' and is 'designed to disable a suspect without causing permanent physical injury.'"  *Vineyard*, 311 F.3d at 1348 (internal citations omitted).  "Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee."  *Id.  See also Calhoun v. Wyatt*, No. 6:11cv4, 2013 WL 1882367, at *5 (E.D. Tex. May 2, 2013) (finding that the use of pepper spray in response to an inmate's noncompliance with multiple orders and physical resistance to being placed in a restraint chair was reasonable, and citing *Vineyard*); *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000) ("[N]othing about the use of chemical spray or even a choke-hold was objectively-unreasonable conduct where the suspect physically resisted arrest.  The officers' actions were all consistent with the idea that they merely were trying to restrain a violent individual.")

Not only was Officer Sanchez's use of OC spray objectively reasonable, so too was his decision to strike Marshall in the face when Marshall grabbed the OC spray canister.  Grabbing

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 17

the OC spray is an attempt to take away an officer's weapon, which obviously is a dangerous and unacceptable act that invites a forceful response by the officer.  Courts have found punches to a suspect's face permissible under far less dangerous situations.  *See, e.g.*, *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001) (holding that an officer did not use excessive force by striking a detainee in the eye with a closed fist while trying to remove the detainee, who was resisting, from a vehicle); *Wells v. Brigman*, No. 3:07cv00025 SWW, 2009 WL 826221, at *4 (E.D. Ark. Mar. 26, 2009) (finding that an officer did not use excessive force by punching an arrestee in the jaw when the arrestee aggressively approached the officer and disregarded the officers' verbal commands to retreat); *Barber v. Santa Maria Police Dep't,* No. 2:08–062732010 DMG MLG, 2010 WL 5559708 (C.D. Cal. Sept.1, 2010) (holding that officers' use of three "distraction strikes" to plaintiff's face and neck were objectively reasonable given that the plaintiff was refusing to comply with the officers' verbal commands, was attempting to destroy evidence, and was physically resisting attempts to handcuff him); *Gonazles v. Novosel*, No. 3:07–04720 CRB, 2008 WL 4614665 (N.D. Cal. Oct.16, 2008) (granting summary judgment on an excessive force claim because no reasonable juror could conclude the officers' use of force, including four to six closed-fisted "distraction blows," was unreasonable where it was in response to a violently resisting suspect who was under the influence of illegal drugs).

In fact, Officer Sanchez's use of closed-fist strikes to Marshall's face would have been objectively reasonable even if Marshall had not grabbed for the OC spray canister.  For example, in *Sloan v. Dulak*, 868 F. Supp. 2d 535 (W.D. Va. 2012), the court held that it was reasonable for a police officer to use physical force, including striking a suspect with his closed fist and using

---

[3] "OC spray" is a shorthand term for oleoresin capsicum spray, or "pepper spray," often misidentified as "mace." The DPD's restrictions on the use of OC spray is set forth in DPD General Order 902.00 Chemical Spray and Pepperball Launcher System.  (Appx. at 19.)

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 18

mace, to subdue a suspect who resists arrest by refusing to present his hands to be cuffed. *Id.* at

543. In *Wilson v. Flynn*, 429 F.3d 465, 469 (4th Cir. 2005), the suspect refused to present his

hands so that he could be handcuffed and placed under arrest when asked to do so. As a result of

his noncompliance, one of the police officers punched the plaintiff in the face and another officer

sprayed the plaintiff with mace. *Id.* at 467. The Fourth Circuit affirmed the trial court's grant of

summary judgment on the basis of qualified immunity.

But the undisputed fact here is that Marshall did grab for Officer Sanchez's OC spray,

and he continued to resist by grabbing at objects on Officer Sanchez's belt. (*See* Appx. at 2:

"The Latin male continued to resist and then grabbed my police radio that was attached to my

right hip, and removed it.") Officer Sanchez was permitted to use substantial force to prevent

Marshall from gaining control of one of Sanchez's other weapons, such as the officer's pistol.

Such was the situation in *Huertas v. Ivanko*, No. 3:11cv00528 VLB, 2013 WL 1193187 (D.

Conn. Mar. 25, 2013), where Huertas's forearm came into contact with the belt area of officer

Ivanko's while they struggled on the ground, causing officer Ivanko to believe that Huertas was

trying to gain control of the Ivanko's service pistol. The court concluded that "[officer Ivanko's]

decision to strike Huertas in the face was at best objectively reasonable and at worst a reasonable

mistake of fact nonetheless entitling Ivanko to qualified immunity." *Id.* at *23.

In light of the officers' need to regain control of the situation, and protect their own

safety, their use of force under these circumstances was not excessive. *See Prymer v. Ogden*, 29

F.3d 1208, 1210 (7th Cir. 1994) (holding that kneeling on an arrestee's back and several kicks to

the ribs were objectively reasonable where the arrestee resisted arrest and tried to strike officers);

*Duran v. Sirgedas*, 240 F. App'x 104, 117-20 (7th Cir. 2007) (unpublished) (no excessive force

where an officer struck the suspect in the leg with a baton and punched him in the head with a

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 19

closed fist, where the suspect struggled with officers and bit one of them).

Use-of-force expert Fox concurs with the Officers' uses of fist strikes and knee strikes to bring Marshall under control. Those "Hard Empty Hand Controls," described in DPD General Orders 901.04 Levels of Control (Appx. at 18), were a measured use of escalating force in response to Marshall's escalating levels of resistance, and were consistent with their training, and were objectively reasonable. (*See* Fox Report at 29-34 (Appx. at 51-56).)

Officer Sanchez also used "knee strikes" to Marshall's side in an attempt to bring him under control and place him in handcuffs after the use of the OC spray:

> Officer Debevec then arrived at the scene and attempted to assist me in handcuffing the Latin male. At this point, the passerby got up and left the scene before we could identify him. The Latin male continued to resist and Officer Debevec delivering three knee strikes to the side of the Latin male's side in an attempt to obtain compliance. I delivered three knee strikes to the side of the Latin male in order to free his hands and place him in handcuffs. Officer Debevec and I were able to finally place him in handcuffs. Dallas Fire Rescue was then dispatched since I had used OC spray. The Latin male continued to resist by kicking. Other officers began to arrive and assisted in controlling the Latin male's legs.

(Appx. at 2.)

As discussed above, officers may use physical force on a resisting suspect to obtain compliance and complete an arrest. Thus, in *Sloan v. Dulak*, *supra*, the court held that the uses of knee strikes to Sloan's back (and fist strikes to his face), were objectively reasonable because Sloan refused to produce one of his arms for handcuffing in the course of a violent struggle. *Sloan*, 868 F. Supp. 2d at 542. Likewise, in *King v. City of Richland*, No. CV-13-5130-JPH, 2015 WL 2151821 (E.D. Wash. May 7, 2015), the court held that the use of several knee strikes as a pain compliance technique to convince the plaintiff to put his legs inside the patrol car so that the officers could shut the door was objectively reasonable and did not violate the Fourth Amendment. *Id.* at *7. Such "pain compliance techniques involve a 'less significant' intrusion

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 20

upon an individual's personal security than most claims of force," and are constitutionally permissible in response to a suspect's resistance to arrest.  *Id.* (citing *Bryan v. MacPherson*, 630 F.3d 805, 820 (9th Cir. 2010)).

Further, as Fox pointed out in his expert report, the use of knee strikes as a pain compliance technique was a permissible response to Marshall's active aggression while resisting lawful arrest.  (*See* Fox Report at 29-34 (Appx. at 51-56).)  In summary, Officer Sanchez's use of knee strikes to gain control of Marshall and place him in handcuffs was consistent with his training, was justified by Marshall's active resistance, and was a tempered response to Marshall's actions.

Officer Sanchez has shown, and the undisputed facts establish, that he is entitled to summary judgment as to Plaintiffs' claims that he used excessive force against Marshall.  Officer Sanchez's various uses of force were not clearly excessive to the need, and they were objectively reasonable in light of the facts as known to Sanchez.  Therefore, the Court should grant Officer Sanchez summary judgment on the grounds that he did not violate Marshall Moreno's Fourth Amendment right to be free from the use of excessive force in the course of a seizure.

### 2.    Officer Debevec

Officer Debevec arrived while Officer Sanchez and the unidentified passerby were trying to get Marshall under control on the grassy median area near the I-30 traffic lanes.  (Appx. at 3.)  Officer Debevec saw that the passerby, a Hispanic male wearing a white Dallas Cowboys jersey, was on top of Marshall's back while Officer Sanchez was trying to handcuff Marshall.  (*Id.*)  The passerby disengaged when Officer Debevec arrived and then walked away from the area.  (*Id.*)  Officer Debevec's affidavit describes the circumstances leading to his own uses of force:

> Immediately after the civilian got off the suspect, I began to assist Officer Sanchez in attempting to gain control over the violently struggling suspect.  Officer Sanchez informed me at this time that he believed the suspect to be "high on something."  As the suspect actively and aggres-

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 21

sively resisted and fought compliance, I attempted to restrain the suspect so I could handcuff him with my handcuffs. At this time, in response to the subject's active resistance, I engaged the suspect with a closed fist, striking him in the lower back in an effort to gain compliance. The suspect did not appear affected by this action, and I struck him again, which had no effect. Eventually, I was able to place a handcuff on the suspect's left arm, and then began trying to pull the suspect's arm back to place his right arm in the cuffs. The suspect continued to actively resist, but as additional officers arrived at the scene, Officer Sanchez and I were able to place the suspect in handcuffs. The suspect continued to kick and move his legs, so I then put my weight on his left thigh to keep him from kicking me and the other officers at the scene. As I did this, an officer at the scene retrieved a set of flexi-cuffs, which were placed on the suspect's ankles. At this point, the suspect stopped struggling.

(Appx. at 3-4.) Those facts are not in dispute.

The analysis of the legality of Officer Debevec's uses of force mirrors that for Officer Sanchez. Officer Debevec responded to Officer Sanchez's Code 3 (emergency–lights and sirens) request from for assistance. (Appx. at 5.) He saw a fellow DPD officer and a civilian engaged in a violent struggle with a suspect. (*Id.*) Officer Debevec saw that Marshall was actively resisting arrest. (*Id.*) Marshall's active resistance to arrest is categorized as "Active Aggression" by DPD General Order 901.03(E) (defining Active Aggression as "Physical actions of assault toward officer. (*See* Appx. at 17.) This includes a suspect who attempts to attack, grabs, punches, kicks, and/or wrestles with the officer.") (*Id.*) In response to Active Aggression, DPD General Order 901.04(C) allows that officers may use "Hard Empty Hand Controls," which include the "use of person weapons, i.e.: hands, feet, etc." (Appx. at 18.)

Officer Debevec's use of two hand (fist) strikes to Marshall's lower back did not violate Marshall's Fourth Amendment rights. As shown above, it is reasonable for an officer to strike a suspect with a closed fist to subdue a suspect who resists arrest by refusing to present his hands to be cuffed. *Sloan*, 868 F. Supp. 2d at 543; *Wilson*, 429 F.3d at 467 (finding that an officer did not violate the Fourth Amendment by punching the plaintiff in the face when the suspect refused

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 22

to present his hands and submit to handcuffing in the course of a struggle with the officers).

Officer Sanchez recalls that Officer Debevec used knee strikes, but Officer Debevec does not.  (*Compare* Sanchez's affidavit (Appx. at 2) *with* Debevec's affidavit (Appx. at 3).)  Giving Plaintiffs the benefit of that discrepancy, Officer Debevec's use of knee strikes as a pain compliance technique still did not violate Marshall's rights for the same reasons that Officer Sanchez's knee strikes did not.  Knee strikes are an objectively reasonable use of force to coerce a suspect into producing his arms for handcuffing in the course of a violent struggle.  *Sloan*, 868 F. Supp. 2d at 542.  *King*, 2015 WL 2151821, at *7 (holding that pain compliance techniques are a constitutionally permissible in response to a suspect's resistance to arrest).

Officer Debevec has shown, and the undisputed facts establish, that he is entitled to summary judgment as to Plaintiffs' claims that he used excessive force against Marshall.  Officer Debevec's limited uses of force were not clearly excessive to the need, and they were objectively reasonable in light of the facts as known to Officer Debevec.  Therefore, the Court should grant Officer Debevec summary judgment on the grounds that he did not violate Marshall Moreno's Fourth Amendment right to be free from the use of excessive force in the course of a seizure.

### 3.     Officer Hales

Officer Hales arrived while Officer Sanchez and Officer Debevec were trying to get Marshall under control on the grassy embankment area near the I-30 traffic lanes.  (Appx. at 5.)  Marshall was handcuffed, but still thrashing and kicking his feet.  (*Id.*)  Officer Sanchez was on Marshall's right side, trying to pin his right shoulder to the ground, and Officer Debevec was on the other side trying to control Marshall's legs.  (*Id.*)  Officer Hales's affidavit describes the circumstances leading to his own uses of force:

> I saw that the suspect was overpowering Officer Sanchez so I ran to the
> suspect's left side to assist.  I placed my left knee across the suspect's left

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B          Page 23

> shoulder in an attempt to control him and prevent him from overpowering the other two officers. I felt like my knee on his shoulder blade was having a minimal effect. The suspect continued resisting by violently thrashing his body and kicking his feet. Another cover officer, Officer Tadlock was able to throw me flexi-cuffs and I was able to place them on the suspect's right foot. Officer Debevec was able to secure the suspect's left foot in the flexi-cuff.
>
> The suspect started calming down and I took my knee off of his left shoulder blade.

(Appx. at 5.) Those facts are not in dispute.

It is also undisputed that Officer Hales arrived *after* the use of the hand strikes and knee strikes, and that Officer Hales did not use any of those control methods. Rather, Officer Hales's use of force was limited to placing his knee across Marshall's shoulder to prevent him from rising up, and placing flexi-cuffs (much like a zip-tie) on Marshall's right ankle. Officer Hales's minimal participation is corroborated by Officer Nevarez, who arrived at about the same time as Officer Hales. Nevarez relates the material facts in his affidavit:

> I drove code 3 to Officer Sanchez'[s] location and observed Officer Sanchez and Officer Debevc [sic] #9672 struggling with a male suspect. Officer Hales and I arrived at the location at about the same time. I got out of my squad car and ran toward the officers. I saw that that officers were struggling with the suspect. It appeared to me that the suspect was overpowering the two officers.
>
> Officer Debevc [sic] was on the left side of the suspect attempting to control the suspect's kicking legs while Officer Sanchez was trying to pin down the suspect's right shoulder and prevent him from getting up.
>
> I don't remember who it was but another officer brought flexi-cuffs and I assisted Officer Debevc [sic] in securing the suspect's feet.

(App'x at 6.) These facts are undisputed.

The Court should note that it is undisputed that Marshall was a very strong man, and that he was capable of providing significant resistance to arrest. Marshall's mother, Rita, stated to DPD Detective Montenegro in her recorded interview soon after the encounter that her son was

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 24

"a very, very strong man.  Very strong.  He doesn't need to be on drugs.  He's *very* strong."
(Appx. at 15 at time index 7:46:00; Moreno Depos. at 67 (Appx. at 86)  In fact, in describing to
Detective Montenegro her conversation with Yolanda in the van, Rita stated, "I said, "I hope
[Marshall] doesn't try to do something to that officer [Sanchez],' because that officer was a small
man."  (Appx. at 15 at time index 7:46:20.)  Rita confirmed those statements in her deposition.
(Appx. at 86-87.)  There can be no dispute that it would take several officers to bring Marshall
under control and place him in handcuffs.

It is also worth noting that the Officers technique of having each officer take control of a
different portion of Marshall's body is a DPD-approved control technique.  DPD General Order
903.00 Use of Restraining Holds describes the Team Take-Down Contact Control:

> A.   if there are multiple officers at the scene, the Team Take-Down
> method is an effective restraining hold for controlling violent subjects.
>
> B.  This restraining hold consists of each officer controlling one limb of
> the subject with the officer's body weight, until the subject can be hand-
> cuffed.  A fifth officer can immobilize the suspect's head, if necessary, to
> prevent injury.

(Appx. at 20.)  Here, the Officers attempted as best as possible to implement that control tactic,
with two officers controlling Marshall's shoulders, while another officer controlled Marshall's
legs until the flexi-cuffs could be placed on Marshall's ankles.

In summary, there is no evidence that Officer Hales engaged in any conduct that could be
regarded as a use of force that was excessive to the need or that was objectively unreasonable.
Officer Hales's uses of force were limited to keeping Marshall from rising up from the ground,
and securing Marshall's legs so that he could not kick anyone.  Therefore, the Court should grant
Officer Hales summary judgment on the ground that he did not violate Marshall's right to be free
from the use of excessive force in the course of a seizure.

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B       Page 25

**D.**   **Alternatively, the Officers Are Entitled to Summary Judgment as to the Plaintiffs' Excessive Force Claims Because the Officers Are Entitled to Qualified Immunity.**

The Court should grant each of the Officers summary judgment because they did not violate Marshall's Fourth Amendment right to be free from the use of excessive force once he had been seized by Officer Sanchez.  In the alternative, even if the Court finds that the Plaintiffs have met their burden to show a genuine issue of material fact as to a constitutional violation, the Officers are still entitled to qualified immunity because a reasonable officer in each individual officer's circumstances could have believed that the uses of force were lawful.

The Plaintiffs cannot raise a genuine issue of material fact as to all three of the elements of their excessive force claims.  Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.  *Saucier v. Katz*, 533 U.S. 194, 207 (2001).  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court explained the proper analysis of objective reasonableness in excessive force cases:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio*, *supra*, 392 U.S. at 20-22, 88 S. Ct. at 1879-1881. . . .  With respect to a claim of excessive force, the same standard of reasonableness at the moment applies:   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d at 1033, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

*Graham*, 490 U. S. at 396-97.

The *Graham* court set forth a list of factors relevant to the merits of a constitutional excessive force claim, "requir[ing] careful attention to the facts and circumstances of each parti-

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                Page 26

cular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, *and whether he is actively resisting arrest or attempting to evade arrest by flight.*" *Id.* at 396 (emphasis added).  Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly' [use excessive force] are entitled to immunity."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Creighton*, 483 U.S. at 641).

Key to resolving the immunity issue is whether the Plaintiffs can meet their burden to show that the Officers' respective uses of force were so far outside the bounds of lawful conduct that the Officers would have understood that they were violating Marshall's constitutional rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *James v. Dallas Hous. Auth.*, 526 F. App'x 388, 392 (5th Cir. 2013) (citing *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009)).  A court must "be able to point to 'controlling authority–or a robust consensus of persuasive authority–that defines the contours of the right in question with a high degree of particularity.'" *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (citing *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (*en banc*)).  That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Finally, this Court must focus "on the specific circumstances of the incident in question." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004)).

The foregoing authorities make clear that the Plaintiffs cannot meet their burden of showing that existing precedent renders the alleged unlawfulness of the Officers' conduct "beyond debate."  The Officers have presented in this brief several case authorities that delineate parameters for the use of balance displacement techniques on fleeing suspects; the use of chemical agents

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 27

(OC spray) and pain compliance measures (knee strikes) on resisting detainees; and use of raw physical force (such as closed-fist strikes) in response to a detainee's attempts to gain control of an officer's weapons.  If there is any robust consensus of persuasive authority, it stands for the proposition that the Officers here acted within the boundaries of the Fourth Amendment.

Of course, the Plaintiffs might be able to direct the Court to instances where similar uses of force were found to be unnecessary and/or objectively unreasonable.  But, this Court must focus "on the specific circumstances of the incident in question."  Those circumstances, reflected in the undisputed evidence set forth in the Officers' affidavits, Rita Moreno's statements and deposition, the store surveillance video recordings, and the undisputed testimony of use-of-force expert Fox, all point to the inescapable conclusion that reasonable police officers in the circumstances faced by the Officers could have believed that the force used was lawful.  Therefore, each of the Officers are entitled to qualified immunity as to the Plaintiffs' Fourth Amendment excessive force claims.

**E.      The Officers Are Entitled to Summary Judgment as to the Plaintiffs'
         Fourteenth Amendment "Excessive Force" Claims Because Those Claims
         Arise Exclusively Under the Fourth Amendment.**

Plaintiffs' complaint makes an obscure reference to Marshall's Fourteenth Amendment rights, asserting that the City of Dallas's "*de facto* polices [sic], practices, procedures and/or customs were unconstitutional because they permitted and tacitly encouraged Dallas Police Department officers, to include Defendants Sanchez, Debevec, and Hales to unjustifiably and unreasonably violate the Fourth and Fourteenth Amendment rights of Mr. Moreno."  (*See* Plaintiffs' Second Amended Complaint at 3 ¶ 9 (ECF #58 at PageID 619).)[4]  Plaintiffs also allege that "[t]he use of excessive force during the seizure of Marshall Moreno, as described above,

---

[4] Plaintiffs do not allege any claims against the City of Dallas.  (*See* Complaint (ECF #58).)

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B            Page 28

deprived Marshall Moreno of his constitutional right to bodily security and liberty guaranteed under the 14th Amendment of the United States Constitution."   (*Id.* at 4 ¶ 12 (ECF #58 at PageID 620).)

Since 1989, the case law has been clear that claims of excessive use of force in the course of an arrest, investigatory stop or other seizure are properly brought under the Fourth Amend-ment and not on a due process theory under the Fourteenth Amendment.   The Supreme Court made that clear in *Graham v. Connor*:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

*Graham*, 490 U.S. at 394.

The Court should grant the Officers summary judgment as to any Fourteenth Amendment claim because all of the conduct of which the Plaintiffs complain arises out of Officer Sanchez's initial investigatory contacts with Marshall and his subsequent seizure, and arise under the Fourth Amendment, not the Fourteenth.   Alternatively, the Officers are entitled to qualified immunity as to any such claim, because it was not clearly established at the time that the Officers acted that their conduct was covered by the Fourteenth Amendment.

## II.      CONCLUSION

For the reasons herein stated, there is no genuine issue with respect to any material fact as to Plaintiffs' constitutional claims, and the Officers are entitled to summary judgment as a matter of law on the grounds that they did not violate Marshall Moreno's constitutional rights, whether to be free from unlawful seizure or from the use of excessive force in the course of a seizure.   In the alternative, the Plaintiffs cannot raise a genuine issue of material fact to establish that any of

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 29

the Officers are not entitled to qualified immunity.  Further, Plaintiffs cannot show that the un-

lawfulness of the Officers' actions is beyond dispute.  Accordingly, the Court should grant the

Officers summary judgment as to all of the Plaintiffs' claims against them.

WHEREFORE, PREMISES CONSIDERED, the Defendants, Albert Sanchez, Jeffrey

Debevec, and Ryan Hales, pray that his motion for partial summary judgment be granted and that

the Plaintiff's claims be dismissed against them.

OFFICE OF THE DALLAS CITY ATTORNEY

Christopher D. Bowers
Interim City Attorney

*s/ Jason G. Schuette*
Assistant City Attorney
Texas Bar No. 17827020
jason.schuette@dallascityhall.com

Tatia R. Wilson
Assistant City Attorney
Texas Bar No. 00795793
tatia.wilson@dallascityhall.com

Stefani R. Williams
Assistant City Attorney
Texas Bar No. 24045316
stefani.williams@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:      214-670-3519
Facsimile:       214-670-0622

ATTORNEYS FOR THE DEFENDANTS

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 30

## CERTIFICATE OF SERVICE

I certify that on 28 June 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

William Chu
David Paulson
Law Offices of William Chu
4455 LBJ Freeway Suite 909
Dallas, Texas 75244
*Attorneys for the Plaintiff Rita Moreno*

Lloyd E. Ward
Ward Legal Group, PLLC
8111 Lyndon B. Johnson Freeway
Dallas, Texas 75251
*Attorneys for the Plaintiffs Roland Moreno,*
*Rhonda White, and Morgan Moreno*

*s/ Jason G. Schuette*
Assistant City Attorney

Defendants Albert Sanchez, Jeffrey Debevec, and Ryan Hales's Brief in Support of
Their Motion for Partial Summary Judgment Based Upon Qualified Immunity
*Roland Moreno et al. v. Officer Albert Sanchez et al.*; Civil Action No. 3:13cv4106-B                    Page 31